ALLEGHENY COUNTY DEPARTMENT OF ADMINISTRATIVE SERVICES

v.

A SECOND CHANCE, INC.

v.

James Parsons and WTAE–TV and Pennsylvania Office of Open Records.

Appeal of: A Second Chance, Inc.

Allegheny County Department of Administrative Services

v.

A Second Chance, Inc.

v.

James Parsons and WTAE–TV, and Pennsylvania Office of Open Records.

Appeal of: Allegheny County Department of Administrative Services.

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2010.

Decided Feb. 16, 2011.

---

Anthony R. Sosso, Jr., Pittsburgh, for appellant.

George M. Janocsko, Pittsburgh, for appellee Allegheny County Department of Administrative Services.

Jonathan R. Donnellan, New York, for appellees James Parson and WTAE–TV.

BEFORE: LEADBETTER, President Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and BUTLER, Judge.

OPINION BY Judge BROBSON.

Appellants Allegheny County Department of Administrative Services (County) and A Second Chance, Inc. (ASCI), appeal from a decision of the Court of Common Pleas of Allegheny County (trial court) under the Right–to–Know Law (RTKL).[1] The trial court ordered the County to supplement its previous response to a RTKL request by securing from ASCI the names, birth dates, and hire dates of all ASCI employees who provide services to the County and by providing the information to Appellees James Parsons and WTAE–

TV. For the reasons that follow, we affirm in part and vacate and remand for further proceedings.

## I. BACKGROUND

On January 27, 2009, Appellee Jim Parsons (Parsons), an investigative reporter for Appellee WTAE–TV, a Pittsburgh television station (collectively Appellees), requested that the County's Department of Human Services provide access under the RTKL to "payroll list[s]" of employees of three entities, including ASCI, with which the County has contracts. The letter specifically requested the following information: "full name of each employee, job position/title, salary, and hire date." By letter dated February 5, 2009, the County electronically provided payroll lists of employees from two entities, because the lists were in its possession. The County responded that it could not provide a payroll list of employees for ASCI, however, because no such record existed within the County's possession, custody, or control.

By letter dated February 9, 2009, Parsons again requested payroll information concerning ASCI, disputing the validity of the County's reason for denying the prior request. By letter dated February 17, 2009, the County again denied the request for the following stated reason:

Allegheny County's Department of Human Services has contracts with close to 400 entities. 337 of these contracts are with direct services providers. [ASCI] is a direct services provider that offers kinship care services. The County does not possess, control or have

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104. The Pennsylvania Office of Open Records (Open Records) operates under the RTKL. One of Open Records duties under the RTKL is to assign appeals officers to review, when challenged, decisions by local agencies in response to RTKL requests and issue orders and opinions on those challenges. *See* Section 1310 of the RTKL, 65 P.S. § 67.1310. Section 1301(a) of the RTKL, 65 P.S. § 67.1301(a), authorizes the requester or the local agency to file a petition for review from a final determination by an Open Records appeals officer with the court of common pleas for the county where the local agency is located.

custody of the employee records of direct services providers. Rather, these records are exclusively the records of the service provider. Thus, [ASCI] is different than the other two contractors for which you requested and received payroll lists.

In short, Section 506(d) of the Right to Know Law is not applicable because this is not a case where *County records* are in the possession of a contractor.

(Reproduced Record (R.R.) at 40a.) Parsons did not appeal this denial to Open Records.

On July 15, 2009, Parsons again made a request to the County under the RTKL, seeking "the payroll list of employees for [ASCI]," claiming that ASCI is a contractor that performs an essential government function for the County. Parsons specifically requested the following information: "full name of each employee, date of birth, job position/title, salary, and hire date." The County granted in part and denied in part the second RTKL request, stating:

Due to State budgetary submission requirements, the County is in possession of job position/title and salary information for its service providers. This record containing this information about [ASCI] is attached in electronic format.

However, the County is not in possession · of the remaining portion of your request, that is, the name of the employee, date of birth and hire date. As a result, this portion of your request is denied. No such record exists in the County; therefore, the County is not obligated to provide it according to Section 705 of the [RTKL]. This section states in part that "an agency is not

required to create a record that does not exist."

(R.R. at 42a.) Parsons then appealed the partial denial of his request to Open Records.

By final determination dated September 15, 2009, Open Records directed the County to "retrieve the requested records evidencing the name, date of birth and hire date of [ASCI] employees from [ASCI] and provide them to [Parsons]." (R.R. at 21a.) The County appealed to the trial court, and ASCI petitioned for intervention, which the trial court granted.

By order dated April 8, 2010, the trial court directed the County to "obtain the names, birth dates and hire dates of all employees of [ASCI] *who provide services to Allegheny County* pursuant to Allegheny County's agreement with [ASCI] and provide such information to [Appellees]." (R.R. at 136a (emphasis added).) [2] The trial court issued the following conclusions of law in support of its decision:

1. [ASCI] performs a "governmental function" for Allegheny County within the meaning of 65 P.S. § 67.506(d)(1) by evaluating individuals to determine whether they qualify to provide foster care to dependent children.

2. Information concerning the names, birth dates and hire dates of all employees of [ASCI] who provide such services to Allegheny County pursuant to its contract with Allegheny County "directly relates to" that governmental function. *Id.*

3. Neither DPW–OCYF Bulletin No. 3170–09–01 nor 55 Pa.Code §§ 3170.92, .93 can be read to provide an exception to the disclosure of the above information under the [RTKL] because neither

---

**2.** We do not read the trial court's order as requiring the County to obtain information from ASCI about *all* ASCI employees. To the contrary, the trial court's order is directed only to those ASCI employees who provide services to the County under the contract between ASCI and the County.

governs the permissibility of providing the information sought by the requesters.

4. No testimony or other evidence was presented by Allegheny County or [ASCI] to establish that disclosure of the requested information "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii).

5. Disclosure of the requested information is not expressly prohibited by 65 P.S. § 67.708(b)(6)(i)(A) or any other section of the [RTKL].

6. The information referenced in Conclusion of Law # 2 is a "[p]ublic record" within the meaning of 65 P.S. § 67.102 because it "documents a transaction or activity of [ASCI and therefore of] an agency," *i.e.*, Allegheny County, and was "created, received or retained ... in connection with a transaction, business or activity [of ASCI and therefore] of [said] agency."

(R.R. at 134a–35a (alterations in para. 6 in original).)

## II. *ISSUES FOR REVIEW*[3]

■ Both the County and [ASCI] filed timely appeals to this Court. The County raises the following issues:

1. Whether the trial court erred when it concluded that the names, birth dates and hire dates of ASCI employees are a "record" or a "public record" under the RTKL?

2. Whether the trial court erred when it failed to apply DPW–OCYF Bulletin No. 3170–09–01—which dictates what information a service contractor must provide to a county child welfare agency—in such a manner as to rebut any presumption under Section 305(a) of RTKL[4] that the names, birth dates, and hire dates of all Second Chance employees constitute a public record?

3. Whether the trial court's construction of Section 506(d)(1) of the RTKL[5] transforms private records of a non-governmental third party into public records?

4. Assuming that [ASCI] performs a "governmental function" as set forth in Section 506(d)(1) of the RTKL, whether the names, birth dates, and hire dates of [ASCI] employees directly relate to the performance of the governmental function?

ASCI adopts the questions raised by the County and raises two additional questions for review:

1. Assuming the names, birth dates, and hire dates of ASCI employees are matters of public record, whether the information is nonetheless exempt from disclosure under Section 708(b)(1)(ii) of the RTKL?[6]

---

[3]. This Court's review in a statutory appeal is "limited to determining whether findings of fact are supported by competent evidence or whether the trial court committed an error of law, or an abuse of discretion in reaching its decision." *Piasecki v. Dep't of Transp., Bureau of Driver Licensing*, 6 A.3d 1067, 1070 n. 7 (Pa.Cmwlth.2010). "The scope of review for a question of law under the [RTKL] is plenary." *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n. 4 (Pa.Cmwlth.2010).

[4]. 65 P.S. § 67.305(a). This section of the RTKL provides that a record in the possession of a local agency is presumed to be a public record except in one of three instances, the third one being where "the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." Section 305(a)(3) of the RTKL.

[5]. 65 P.S. § 67.506(d)(1).

[6]. 65 P.S. § 67.708(b)(1)(ii).

2. Whether disclosure of the names, birth dates, and hire dates of ASCI employees is consistent with the intent of the RTKL and Pennsylvania case law?

In their brief on appeal, Appellees respond to these arguments. They also argue, however, that the County's only stated reason for denying Parsons' request for ASCI employees' names, birth dates, and hire dates was the County's claim that the information was not in its possession, but in the possession of ASCI. Based on this Court's decision in *Signature Information Solutions v. Aston Township*, 995 A.2d 510 (Pa.Cmwlth.2010), Appellees maintain that all other issues have been waived. Appellees also claim that the trial court erred in granting ASCI intervenor status because the request for intervention was not timely under the RTKL.[7] Finally, Appellees seek reasonable attorneys' fees and costs in defending Open Records' decision.

### III. DISCUSSION

#### A. Waiver

The County and ASCI both argue that the trial court committed legal error when it concluded that the names, dates of birth, and hire dates of ASCI employees are "public records" under the RTKL. Relying on this Court's decision in *Signature Information Solutions*, Appellees argue that the County has waived this issue because it was not included in the County's original denial of Appellees' request for the information. Appellees, in fact, claim that the County raised this issue for the first time in its appeal to the trial court.

In *Signature Information Solutions*, the requester under the RTKL asked the township for certain real estate tax information. Citing Section 704(b)(1) of the RTKL,[8] the township denied the request, noting that the requested information was "available through publicly accessible electronic means." After the requester appealed to Open Records, the township changed its position. Instead of relying on Section 704(b)(1) to support is denial, the township claimed that the record did not exist and that, under Section 705 of the RTKL,[9] the township was not required to create a record in response to the request. The Open Records appeals officer ruled in favor of the requester. Relevant for purposes of this case was the appeals officer's determination that once the requester appealed the denial to Open Records, the township could not assert a new ground for denying the request.

On appeal, the trial court reversed. The trial court reasoned that because the appeals officer had the authority to create a record relating to the request,[10] the township could submit any and all information to support its denial and was not limited to its initial reason for denying the request. On appeal, this Court reversed the trial court:

---

7. The Court notes that the Pennsylvania Newspaper Association (PNA) has filed a brief as *amicus curiae* in support of Appellees' positions in this appeal.

8. 65 P.S. § 67.704(b)(1). Section 704(b)(1)of the RTKL provides, in part, that an agency may respond to a RTKL request "by notifying the requester that the record is available through publicly accessible electronic means."

9. 65 P.S. § 67.705. Section 705 of the RTKL provides:

 When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record.

10. Section 1102(a) of the RTKL, 65 P.S. § 67.1102(a).

Contrary to the trial court's reading of the provision, section 1102(a) of the Law does *not* permit an agency that has given a specific reason for a denial to assert a different reason on appeal. Section 1102(a) of the Law permitted the Township only to submit documents in support of its stated position.

If an agency could alter its position after the agency stated it and the requester addressed it in an appeal, then the requirements in sections 903(2) and 1101(a)(1) of the Law would become a meaningless exercise.[11] An agency could assert any improper reason for the denial of a right-to-know request and would not have to provide an arguably valid reason unless and until the requester filed an appeal. Such a reading of section 1102(a) of the Law would make a mockery of the process set forth in the Law.

*Signature Information Solutions,* 995 A.2d at 514 (emphasis in original).

In its initial denial of Parsons' July 15, 2009 request, the County gave the following reason:

> ... [T]he County is not in possession of the remaining portion of your request, that is, the name of the employee, date of birth and hire date. As a result, this portion of your request is denied. *No such record exists in the County;* therefore, the County is not obligated to provide it according to Section 705 of the [RTKL]. This section states in part that "an agency is not required to create a record that does not exist."

(R.R. at 42a (emphasis added).) In his appeal to Open Records, Parsons raised Section 506(d) of the RTKL, which ad-

dresses public records *not* in the possession of an agency. (Certified Record (C.R.) # 1, Ex. G.) In its response to Parsons' appeal, the County claimed that it denied the request "because it does not have this information and it is not required by applicable state regulation or directive to maintain this information." (C.R. # 7, Ex. 1 at 2.) The County continued this theme in its response, explaining why it believed the information sought was "private," not "public," and, as a consequence, why Section 506(d), on which Parsons relied, did not apply. (*Id.* at 4–5.)

Though the County and ASCI refined their arguments before Open Records and on appeal to the trial court, they did so in response to the arguments Parsons made before Open Records and to the decision of Open Records. They have been consistent, however, in their overarching position that the County did not have the requested information and that the information sought was "private" and not "public." Accordingly, the County did not abandon its initial reason for denying Parsons' request in favor of an entirely new reason to defend its denial before Open Records, as the township did in *Signature Information Solutions.* We, therefore, reject Appellees' waiver argument.

### B. Intervention

Appellees argue that the trial court erred in granting ASCI intervenor status because the request for intervention was not timely under the RTKL. Despite knowing that Parsons had appealed the County's denial of his RTKL request to Open Records, ASCI did not submit any information to Open Records while the

---

11.· 65 P.S. §§ 67.903(2), .1101(a). Section 903(2) of the RTKL requires that an agency include in its written denial of a request, *inter alia,* "[t]he specific reasons for the denial, including a citation of supporting legal au-

thority." Section 1101(a) of the RTKL requires, *inter alia,* that a requester who appeals a denial to Open Records "address any grounds stated by the agency for delaying or denying the request."

matter was pending before it. According to Appellees, by failing to do so, ASCI was barred from participating in the proceedings before the trial court as an intervenor.

Appellees rely on Section 1101(c) of the RTKL in support of their argument. This section provides:

(1) A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.

(2) The appeals officer may grant a request under paragraph (1) if:

(i) no hearing has been held;

(ii) the appeals officer has not yet issued its order; and

(iii) the appeals officer believes the information will be probative.

Section 1101(c) of the RTKL. Because ASCI did not "intervene" before Open Records pursuant to this language, Appellees argue that their request to intervene before the trial court was untimely. We disagree.

We do not read Section 1101 as a formal intervention provision authorizing a person with a direct interest to seek "party" status in a proceeding before Open Records. To the contrary, this section should be construed according to the clear language chosen by the General Assembly. 1 Pa. C.S. § 1921(b). The language merely allows a person with a direct interest to supply "information" to an Open Records appeals officer. It does not allow a person with a direct interest to assume a status in the Open Records proceedings on par with either the requester or the agency.[12] The language gives no greater status to those who provide additional information than those who do not. Indeed, even a person who supplies information to an Open Records appeals officer under Section 1101 has no right to appeal the appeals officer's final determination, as that right is conferred only upon "a requester or the agency." Sections 1301(a) and 1302(a) of the RTKL, 65 P.S. §§ 67.1301(a), 67.1302(a). The person is not even entitled to notice that the requester or the agency has sought judicial review of the final determination. Section 1303(a) of the RTKL, 65 P.S. § 67.1303(a) (limiting notification to the agency, requester, and appeals officer). For these reasons, we refuse to construe Section 1101 as a mandatory intervention provision, barring any person with a direct interest and with knowledge of the Open Records proceeding from intervening in a subsequent judicial proceeding if the person did not also seek to provide additional information to the Open Records appeals officer.

 Appellees nonetheless challenge the trial court's decision granting ASCI intervention. We note that the proceeding before the trial court was a statutory appeal, authorized under Section 1302 of the

---

12. A comparison of Section 1101 of the RTKL to the intervention rules in the General Rules of Administrative Practice and Procedure illustrates this point. *See* 1 Pa.Code §§ 35.27–.32. We note that Open Records has established "Interim Guidelines," which may be found at ·https://www.dced.state.pa.us/public/oor/rtkinterimappealsguidelines.pdf, governing the appeals process before its appeals officers. The Interim Guidelines and Section 1102(b)(2) of the RTKL provide that *if* a hearing is held on an appeal, Open Records will provide public notice of the hearings and an opportunity for interested parties to intervene pursuant to the above rules. The appeals officer, however, did not hold a hearing in this case.

RTKL. The RTKL does not address intervention in a RTKL appeal under Sections 1301 or 1302. The intervention rules in the Pennsylvania Rules of Civil Procedure (Pa. R.C.P. 2326–2350) are not applicable to statutory appeals. *Appeal of Borough of Churchill*, 525 Pa. 80, 87, 575 A.2d 550, 553 (1990). Similarly, Rule 1531(a) of the Pennsylvania Rules of Appellate Procedure, which also provides for intervention, does not apply to appeals from government agencies to the courts of common pleas. Pa. R.A.P. 1501.

■ In the absence of authority governing the process of intervention in an appeal from an Open Records decision to the trial court, the trial court has discretion to rule on the matter. *Snyderman v. Pennsylvania Liquor Control Bd.*, 682 A.2d 1322, 1325 (Pa.Cmwlth.1996). In *Snyderman*, a school district and other individuals filed protests to an application to the Liquor Control Board (LCB), seeking to transfer a liquor license. The LCB approved the transfer, and one of the individual protestants appealed the LCB's decision to the court of common pleas.[13] Under Section 464 of the Liquor Code, the school district had the right to appeal the LCB's decision. The school district, however, did not file a timely appeal. Instead, it filed a praecipe to intervene in an individual protestant's appeal. The trial court struck the school district's praecipe to intervene. The school district appealed that decision to this Court. On appeal, we affirmed:

A determination lying within the court's discretion will not be disturbed absent a manifest abuse of that discretion. A showing of a trial court's abuse of discretion requires "manifest unreasonableness, or partiality, prejudice, bias, ill-will, or such lack of support as to be clearly erroneous." A review of the record reveals that the trial court's failure to grant the District's intervention did not amount to an abuse of discretion. The fact that the District had a statutory appeal available, which it did not utilize, and its failure to provide sufficient grounds for intervention supports a conclusion that the trial court's judgment was not unreasonable. We also recognize that the District's motivation in seeking intervention was due to its failure to appeal within the twenty day statutory limit.

*Snyderman*, 682 A.2d at 1325–26 (citations omitted).

■ In granting ASCI's request to intervene, the trial court specifically noted that it saw no prejudice to Appellees in granting the intervention. (R.R. at 78.) This conclusion appears to be supported by even Appellees' arguments below. In their brief opposing the appeal, Appellees acknowledged that "the claims raised in ASC[I]'s proposed petition are essentially identical to the fatally flawed arguments raised by the County and rejected by OOR." (C.R. # 7 at 10, 12.) Moreover, unlike the school district in *Snyderman*, ASCI had no statutory right to appeal the adverse Open Records decision in this case. Under these circumstances, we conclude that the trial court did not abuse its discretion in granting ASCI's petition to intervene.

### C. Merits

#### 1. Record

"Record" is expressly defined in the RTKL as follows:

---

**13.** Section 464 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4–464, places jurisdiction over appeals from the grant or denial of an application to transfer a license in the "court of common pleas in which the premises or permit applied for is located."

... Information, regardless of physical form or characteristics, *that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency.* The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a date-processed or image-processed document.

Section 102 of the RTKL, 65 P.S. § 67.102 (emphasis added). On appeal, the County and ASCI argue that the names, birth dates, and hire dates of ASCI employees performing services pursuant to the ASCI contract with the County do not meet this definition. We disagree.

There are two parts to this definition. The first requires that the requested information "document[ ] a transaction or activity of an agency." The information sought here is information about certain ASCI employees who provide services pursuant to a contract between ASCI and the County. The contract between ASCI and the County is the "transaction or activity" of the agency, in this case the County.[14] It cannot reasonably be disputed that the ASCI employee information stems from ASCI's, and not the County's, hiring activities. The question, however, is whether the information about the ASCI employees *also* "documents" the contract between ASCI and the County.

■ Where a word is not expressly defined in the RTKL, we will construe the word according to its common and approved usage. 1 Pa.C.S. § 1903(a). To do so, the Court may look to dictionary definitions. *Lukes v. Dep't of Pub. Welfare*, 976 A.2d 609, 616 (Pa.Cmwlth.2009). We must also interpret the RTKL liberally to effect its purpose—that being, "to promote access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions." *Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa.Cmwlth.2010) (en banc); 1 Pa.C.S. § 1928(c).

Neither the parties nor *amicus curiae* PNA offer a proposed definition for the word "documents." In light of the statutory construction principles that guide our interpretation of the RTKL, we believe that the word "documents" must be liberally construed. *Lukes*, 976 A.2d at 618 (concluding, after thorough statutory construction analysis, that word "maintains" in former RTKL should be liberally construed). In this regard, the transitive verb "documents" has been defined as follows:

> 1. To furnish with document or documents. 2. To support (a claim, for example) with evidence or information. 3. To support (statements in a book, for example) with written references or citations; annotate.

AMERICAN HERITAGE COLLEGE DICTIONARY at 415 (4th ed.2004). The Shorter Oxford English Dictionary includes four alternative definitions, including, *inter alia,* "[p]rove or support by documentary evidence" and "[p]rovide (a person) with evidence or information, keep informed." SHORTER OXFORD ENGLISH DICTIONARY at 727 (5th ed.2002).

Applying these definitions, we are satisfied that information about ASCI employees who perform services for the County pursuant to the contract between ASCI and the County "documents"—*i.e.,* proves,

---

**14.** "Agency" is expressly defined in the RTKL to include "[a] Commonwealth agency, *a local agency,* a judicial agency or a legislative agency." Section 102 of the RTKL (emphasis added).

supports, evidences—the existence of the contractual arrangement between ASCI and the County. Because it documents the existence of the contract with the County, it documents an activity or transaction of the County.

The second part of the definition of "record" requires that the information sought "is created, received *or* retained pursuant to law or in connection with a transaction, business or activity of the agency." Section 102 of the RTKL. This language does not limit "record" to only those documents "created, received or retained" by the agency. Here, Parsons seeks information about the ASCI employees who perform services for the County that ASCI either created, received, or retained as the employer. It created, received, or retained that information in connection with its contractual obligations to the County (the "transaction, business or activity of the agency"). Accordingly, the information satisfies this second prong of the definition of "record."

█ Based on the foregoing, information about ASCI employees who perform services for the County pursuant to the contract for services between the County and ASCI constitutes a "record" under the RTKL.

### 2. Public Record

The RTKL compels local agencies, such as the County, "to provide *public records* in accordance with this act." Section 302(a) of the RTKL, 65 P.S. § 67.302(a) (emphasis added). The law further provides that "[u]nless otherwise provided by law, a *public record* ... shall be accessible for inspection and duplication in accordance with this act." Section 701(a) of the RTKL, 65 P.S. § 67.701 (emphasis added).

We must now determine whether the records in question—*i.e.,* the names, hire dates, and dates of birth of ASCI employees who perform services for the County pursuant to the County's contract with ASCI—are "public records" under the RTKL.

Because this information is not in the possession of the County, there is no presumption that it is a public record. Section 305 of the RTKL; *see Office of Budget v. Office of Open Records,* 11 A.3d 618, 621 (Pa.Cmwlth.2011). We must, instead, look to the definition of "public record" in the RTKL, which provides:

**"Public record."** A record, including a financial record, *of a Commonwealth or local agency* that:

(1) is not exempt under section 708;

(2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree;

(3) is not protected by a privilege.

Section 102 of the RTKL (emphasis added). ASCI and the County argue that the records in question do not meet this definition because they are not records "of" the County; rather, they are records "of" ASCI. Neither the County nor PNA offers any direct response to this argument.

The word "of" is a preposition, used generally to indicate the object's origin, its owner or possessor, or its creator. *See* AMERICAN HERITAGE COLLEGE DICTIONARY at 964 (4th ed.2004). There is nothing in the record to indicate that the information in question originated with the County, that the County has any ownership or possessory interest in the information, or that the County played any role in creating the information.[15] Indeed, the names, hire

---

**15.** Applying a similar analysis, in *In re Silberstein,* 11 A.3d 629 (Pa.Cmwlth.2011), this

Court recently held that emails and other documents on a township commissioner's

dates, and birth dates of ASCI employees appear to be information that only ASCI created, possesses, and owns. For these reasons, the requested information does not constitute a record "of" a local agency and, thus, does not meet the Section 102 definition of "public record" in the RTKL.

This, however, does not end our inquiry. The trial court held that the information sought is a "public record" under Section 506(d)(1) of the RTKL and, thus, is subject to access under the law. Section 506(d)(1) provides:

> A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

The trial court concluded that ASCI performed a "governmental function" pursuant to its contract with the County and that the names, birth dates, and hire dates of ASCI employees who provide services pursuant to that contract are information that "directly relates to" the "governmental function."

The County and ASCI challenge these conclusions on appeal. First, they argue that because the information in question does not meet the Section 102 definition of "public records," Section 506(d)(1) simply

does not apply. Alternatively, they argue that the information does not "directly relate" to the performance of ASCI's obligations under the services contract with the County. Neither the County nor ASCI dispute the trial court's conclusion that ASCI performs a "governmental function." [16]

We first address the argument that because the information in question does not meet the definition of "public record" under Section 102 of the RTKL, Section 506(d)(1) does not apply. In making this argument, the County and ASCI rely on the plain language of the section, which starts with the phrase "[a] *public record that is not in the possession of an agency.*" (Emphasis added.) Based on this language, ASCI and the County claim that Section 506(d)(1) does not apply to "records" in the possession of a party with whom an agency has a contract; rather, it only applies to "public records." They claim that this section is intended "to prevent governmental bodies from concealing public information, particularly information about the expenditure of public funds, from scrutiny by placing public records in the hands of third parties." (County Br. at 22.)

Appellants' argument that Section 506(d)(1) is intended to cover instances where an agency attempts to hide a "public record" by placing it in the hands of third-party contractors does not comport with the clear and unambiguous terms of

personal computer were not "public records." We reasoned:

> [U]nless the emails and other documents in Commissioner Silberstein's possession were produced with the authority of York Township, as a local agency, or were later ratified, adopted or confirmed by York Township, said requested records cannot be deemed "public records" within the meaning of the RTKL as the same are not "of the local agency."

*In re Silberstein,* 11 A.3d at 633.

**16.** *See East Stroudsburg Univ. Found. v. Office of Open Records,* 995 A.2d 496, 504 (Pa. Cmwlth.2010) (en banc) ("[T]he language [of Section 506(d)(1)] is plain that all contracts that governmental entities enter into with private contractors necessarily carry out a 'governmental function'—because the government always acts as the government.").

the RTKL dealing with access to "public records." The location of a "public record" is not at all a relevant consideration in terms of the public's right to *access.* Section 701(a) of the RTKL provides that *all* "public records" shall be accessible. It is not limited to "public records" in the possession of the agency. Similarly, Section 302(a) requires local agencies to provide "public records" in accordance with the provisions of the RTKL, not just those "public records" in the possession of the local agency. Indeed, Section 506(d)(3) provides that "[a] request for a *public record in the possession of a party other than the agency* shall be submitted to the open records officer of the agency." Section 506(d)(3) of the RTKL (emphasis added). Thus, under these provisions, the General Assembly clearly and unambiguously contemplated that all "public records," regardless of where they are located, should be accessible to the public. Section 506(d)(1), then, must address something other than the public's right to access "public records"; otherwise, it is redundant of other provisions of the RTKL and would amount to mere surplusage. 1 Pa.C.S. § 1921(a); *Commonwealth v. Ostrosky,* 589 Pa. 437, 450, 909 A.2d 1224, 1232 (2006) ("The legislature . . . is presumed not to intend any statutory language to exist as mere surplusage and, accordingly, courts must construe a statute so as to give effect to every word.")

We are mindful that where the General Assembly defines a term used in a statute, we are bound by those definitions. *Pennsylvania Associated Builders and Contractors, Inc. v. Commonwealth, Dep't of Gen. Servs.,* 593 Pa. 580, 591, 932 A.2d 1271, 1278 (2007). Doing so in this case, however, leads to the inescapable conclusion that Section 506(d)(1) is ambiguous (at best). Stripped of the language dealing with the location of the subject record and the connection of the record to a govern-

mental function, the section effectively provides:

> A *public record* . . . that is . . . *not exempt* under this act, shall be considered a *public record of the agency* for purposes of this act.

But a "public record" is, by definition under Section 102, a "record" that is *not exempt.* Applying the strict statutory definition, then, would require us to read Section 506(d)(1) to provide that a "record" that is not exempt (meaning a "public record"), so long as it is not exempt, shall be considered a "public record" of the agency. Similarly, a "public record" is, by definition under Section 102, a "record" *of* the local agency. Applying the strict statutory definition, then, would require us to read Section 506(d)(1) to provide that a "record" of a local agency that is not exempt (meaning a "public record") shall be considered a record of a local agency (meaning a "public record") *of the agency.*

Not only does application of the statutory definition of "public record" to every instance of "public record" in Section 506(d)(1) render the section ambiguous, the provision becomes nonsensical, absurd, unreasonable, and impossible of execution. 1 Pa.C.S. § 1922(1) (providing that it is presumed "General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"). Where, as here, a statute is ambiguous, we must endeavor to ascertain the General Assembly's intent by considering other matters, such as "[t]he occasion and necessity for the statute," "[t]he object to be attained," and "[t]he consequences of a particular interpretation." *Id.* § 1921(c)(1), (4), (6). We are also mindful that we must presume "[t]hat the General Assembly intends the entire statute to be effective and certain." *Id.* § 1922(2).

This Court has, on a handful of occasions, considered the language of Section 506(d)(1) and its application to records of private contractors. Though none of those cases dealt specifically with the statutory construction issue now before us, they nonetheless are helpful in our current analysis. In *East Stroudsburg University Foundation v. Office of Open Records*, 995 A.2d 496 (Pa.Cmwlth.2010), the Court noted the limitations the General Assembly placed on access to records in a contractor's possession:

> The General Assembly ... used the term "governmental function" to limit access to only those records in a contractor's possession that relate to that function, not other records that a contractor maintains during the normal scope of business. Access is further restricted to records that "directly" relate to carrying out the governmental function, to avoid access that may relate to the contract but do not relate to its performance. For example, material used in preparation for the bid for the governmental contract would not be subject to access because those records do not directly relate to carrying out the governmental function.

*East Stroudsburg*, 995 A.2d at 504.

In *Buehl v. Office of Open Records*, 6 A.3d 27 (Pa.Cmwlth.2010), a prison inmate (Buehl) filed a request under the RTKL with the Department of Corrections (Corrections), seeking copies of records showing the wholesale costs that Corrections' prison commissary contractor (Keefe) paid for various items resold to inmates through the commissary and the quality of those items. Corrections denied the request, claiming that the records did not exist and Corrections was not required to create them under the RTKL. Corrections, however, did provide the inmate with a memo indicating how much Corrections

paid the private contractor for the items. The inmate appealed to Open Records, arguing that while Corrections did not have the information, the information was nonetheless considered a "public record" under Section 506(d)(1). In response, Corrections argued that its contract with the vendor did not address the actual cost that the contractor paid for items; rather, it addressed only Corrections' purchase of items from the contractor. Thus, Corrections maintained that the requested information was not within the parameters of the contract and, therefore, was not subject to disclosure under Section 506(d)(1). *Buehl*, 6 A.3d at 28–29.

OOR denied the appeal. It reasoned that while the contract to provide commissary services to prisoners was a contract for a governmental function under Section 506(d)(1), how much the contractor paid for the items was not information that "directly related" to the sale of those items to inmates. Thus, the request for this information fell outside of the parameters of the contract between Corrections and the vendor and, thus, was not accessible under the RTKL. *Id.* at 29–30.

The inmate appealed, and this Court affirmed. In so doing, the Court offered the following explanation of Section 506(d)(1) and its application to the inmate's request:

> In order for *third-party records* to be considered *public records* of [Corrections] under the RTKL, they must be in the possession of the contracting party and must "directly relate to the governmental function." Moreover, Section 506(d)(2) goes on to state that "[n]othing in this act shall be construed to require access to any other record of the party in possession of the public record." ...
>
> We agree with [Open Records'] determination that the records in Keefe's possession relating to the costs it paid for

commissary items do not directly relate to providing commissary services to inmates. Contrary to Buehl's assertions, Keefe's only contractual obligations to [Corrections] pertain to providing commissary services and re-selling items to inmates at agreed upon prices. As [Open Records] indicated, what Keefe paid for the items is beyond the parameters of its contract with [Corrections]— it does not directly relate to performing or carrying out this governmental function.

*Id.* at 30–31 (citations omitted) (emphasis added).

With the foregoing in mind, while the location of a particular "public record" is not a relevant consideration in terms of the public's right to *access* the "public record," under the RTKL the location of a "record" is a relevant consideration when determining whether a "record" is a "public record." Indeed, if "[a] record is in the possession of a Commonwealth agency or local agency," and is not otherwise exempt or protected by privilege, the "record" will be presumed to be a "public record." Section 305(a) of the RTKL. We believe that Section 506(d)(1), similarly, is a provision that defines "public record" in terms of its location. As we noted in *East Stroudsburg* and *Buehl,* the provision deals with the circumstance where an agency contracts with a private company to perform a "governmental function." If the agency, instead, had chosen to perform that governmental function itself, there can be no question that the agency's records with respect to the performance of that function could satisfy the Section 102 definition of "public record." Indeed, the records may fall within the presumption of Section 305(a). Thus, Section 506(d)(1) appears to be the General Assembly's effort to ensure that some level of public access to information about governmental functions is preserved where an agency chooses to con-

tract out the performance of that function to a third-party.

■ We, therefore, interpret Section 506(d)(1) as providing that a record in the possession of a party with whom an agency has contracted to perform a governmental function on behalf of the agency shall be deemed a "public record," and, as a consequence, shall be accessible under the RTKL, so long as the record (a) directly relates to the governmental function and (b) is not exempt under the RTKL. This interpretation is consistent with the overall purposes and goals of the RTKL; avoids a construction that is absurd, unreasonable, and impossible to execute; and gives meaning and certainty to this and other provisions of the law.

As noted above, the information sought here—names, birth dates, and hire dates of ASCI employees who perform services pursuant to ASCI's contract with the County—meets the definition of "record" and is in the possession of ASCI. There is no dispute that the contract between the County and ASCI is a contract to perform a "governmental function." The trial court concluded that the information "directly relates to" the governmental function. The County and ASCI, however, argue on appeal that the trial court erred—*i.e.,* that the information does not "directly relate" to the governmental function.

The trial court does not explain in its decision why the names, birth dates, and hire dates "directly relate" to ASCI's performance of its contractual obligations. In *Buehl,* this Court looked specifically to the contractual obligations between the commissary vendor and Corrections in order to determine whether the information sought "directly related" to the governmental function. We concluded that because the only obligation of the commissary vendor was to sell goods to Cor-

rections for a fixed price, the amount the vendor actually paid for the goods was "beyond the parameters of its contract with [Corrections]—it does not directly relate to performing or carrying out this governmental function." *Buehl,* 6 A.3d at 31.

According to the trial court's decision, the record before the trial court consisted of (a) the factual and procedural history recounted in pages 1 through 5 of Open Records' final determination dated September 15, 2009; (b) paragraphs 4 and 5 from ASCI's Petition to Intervene; and (c) an exhibit listing job duties and payroll information for ASCI employees. Under the RTKL, the record before the trial court also consisted of "the request, the agency's response, the appeal filed under Section 1101 [of the RTKL], ... and the final written determination of the appeals officer." Section 1303 of the RTKL.

After reviewing the record, we are unable to evaluate whether the names, birth dates, and hire dates of ASCI employees "directly relate" to ASCI's performance of its contractual obligations. In terms of documenting the flow of government funding, the County has provided Parsons (the requester) with the job position/title of each employee and salary information. Whether the actual names of these employees, their ages, and their hire dates also have a direct bearing on ASCI's performance of its contractual obligations can only be determined by examining those obligations. A copy of the contract between ASCI and the County, however, is not in the record of the proceedings before Open Records or the trial court.[17] Moreover, while there is a great deal of argu-

ment from counsel in the record as to the nature and extent of the services that ASCI provides to the County pursuant to the contract, there is no sworn testimony or other record evidence to establish these facts.

The absence of a copy of the contract between ASCI and the County in the evidentiary record in this case and/or testimony as to the scope, nature, and extent of ASCI's contractual obligations to the County prevents meaningful appellate review of the trial court's determination that the information sought "directly relates" to ASCI's performance of its contractual obligations. Accordingly, we will vacate the trial court's determination and remand for further proceedings. *See Bingnear v. Workers' Comp. Appeal Bd. (City of Chester),* 960 A.2d 890 (Pa.Cmwlth.2009) (vacating and remanding where record inadequate for judicial review). On remand, the trial court should take additional evidence on this issue and render findings and conclusions of law based on the record before it to determine whether the names, birth dates, and hire dates "directly relate" to ASCI's performance of its contractual obligations.

### 3. DPW–OCYF Bulletin No. 3170–09–01/02

The County argues that the information Appellees seek is exempt from disclosure under the law because it is information that ASCI is not required to provide to the County. The County directs us to DPW–OCYF Bulletins Nos. 3170–09–01 and 3170–09–02 (Bulletins), which set forth documentation requirements for county

---

**17.** The only place in the record that we found a copy of what purports to be the contract between ASCI and the County is in an attachment to a post-hearing brief submitted to the trial court. The transcript of the trial court proceedings and the trial court's written deci-

sion, however, do not indicate that the contract was ever admitted into evidence or made part of the record before the trial court. Moreover, there is nothing in the record to indicate that the contract was part of the record of proceedings before Open Records.

children and youth agencies and those who provide services to those agencies. The Bulletins do not require ASCI to provide the County or the Commonwealth, Department of Public Welfare (DPW) with the names, birth dates, and hire dates of ASCI employees performing services pursuant to the contract between the County and ASCI.

The County relies on two provisions from the RTKL. The first is Section 305(a)(3) of the RTKL, which provides that a record in the possession of a local agency is presumed to be a public record except in one of three instances, the third one being where "the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." This provision, however, clearly does not apply in this case because the records in question are *not* in the County's possession.

The second provision on which the County relies is Section 306 of the RTKL, 65 P.S. § 67.306, which provides: "Nothing in this act shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, *regulation* or judicial decree." (Emphasis added.) The County argues that the Bulletins are regulations. In *Northwestern Youth Services, Inc. v. Department of Public Welfare*, this Court ruled that the Bulletins are regulations. 1 A.3d 988, 996 (Pa.Cmwlth.2010). We also held, however, that the Bulletins were invalid because DPW did not promulgate

them in accordance with the Act commonly known as the Commonwealth Documents Law.[18] *Id.*; *see Borough of Bedford v. Dep't of Envtl. Prot.*, 972 A.2d 53, 62 (Pa. Cmwlth.2009) ("The effect of an agency's failure to promulgate a regulation in accordance with these various statutory requirements is to have the regulation declared a nullity.").

■ Accordingly, the Bulletins are a legal nullity and cannot support any claim that the requested information in this case is private and, therefore, exempt from disclosure under the RTKL. But even if the Bulletins had the force and effect of law, like the trial court, we see nothing in the Bulletins that would support an exemption from disclosure in this case. The fact that the Bulletins only require local agencies and their contractors to submit certain information does not mean that all other information is private and exempt from disclosure under the RTKL.

### 4. Personal Security Exception

ASCI argues that the names, birth dates, and hire dates of the ASCI employees are exempt under Section 708(b)(1)(ii) of the RTKL, which has come to be known as the personal security exemption.[19] This exemption prohibits a disclosure that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." Section 708(b)(1)(ii) of the

---

18. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602.

19. Appellees argue that ASCI has waived this argument because (1) the County did not raise it as a basis for denying the original request, and (2) ASCI did not raise it before Open Records. As noted above, however, ASCI was not obligated to participate in the proceedings before Open Records. Even if it were, its participation would have been limited to sup-

plying "information," not advancing arguments in support of the County's denial. Moreover, as a private party seeking to protect its information from disclosure, ASCI is entitled to raise its own arguments as to why the information should not be made public under the RTKL, and it should not be limited to the County's original grounds for denying Parsons' request. Thus, we refuse to find waiver in this instance.

RTKL. *See Lutz v. City of Phila.*, 6 A.3d 669, 676 (Pa.Cmwlth.2010).

"The burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving the request *by a preponderance of the evidence.*" Section 708 of the RTKL (emphasis added). With this unambiguous expression of legislative intent, we believe it equally appropriate under the law to place the burden on third-party contractors whose records fall within Section 506(d)(1) to prove by a preponderance of the evidence that the records are exempt.

We agree with the trial court that neither the County nor ASCI presented evidence to establish that disclosure of the requested information "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." ASCI urges us to remand, arguing that it "was not afforded an evidentiary hearing on the issue." (ASCI Br. at 12–13 n. 1.) But upon review of the transcript, it appears that the trial court afforded the parties an opportunity to present evidence. Indeed, the trial court accepted a stipulation of the parties, and ASCI even admitted an exhibit into the record by stipulation. The proceeding before the trial court appears to have been a hybrid hearing and oral argument.

Nonetheless, as noted above, we are already remanding this matter for additional proceedings on the question of whether the information sought "directly ,relates" to ASCI's performance of its contractual obligations to the County. Though we see nothing in the record to indicate that ASCI was somehow prevented from developing a record on the personal security exemption, we see no harm in allowing it another opportunity to do so on remand. If ASCI's employees' physical safety and personal security could truly be at risk if the information sought is placed into the public domain, it is a serious matter that deserves thoughtful consideration on a complete record.

## IV. CONCLUSION

For the reasons set forth above, we affirm the trial court's decision granting ASCI intervenor status.[20] We also affirm the trial court's ruling that the information sought is not exempt under Section 305(a)(3) and 306 of the RTKL. We vacate the balance of the trial court's decision and remand for further proceedings. Specifically, the information sought in this case will only be deemed a "public record" under Section 506(d)(1) if it directly relates to the performance of ASCI's obligations under the contract. Because the record is not adequate for meaningful appellate review of this question, we vacate the trial court's determination that the information sought is a "public record" and remand for further proceedings consistent with this opinion. On remand, the trial court shall also afford ASCI the opportunity to create a record on whether the information sought is exempt under Section 708(b)(1)(ii) of the RTKL and shall determine whether the exemption applies based on the record evidence.

President Judge LEADBETTER concurs in the result only.

Judge McCULLOUGH did not participate in the decision in this case.

---

**20.** Because our decision neither "reverses the final determination of the appeals officer [nor] grants access to a record after a request for access was deemed denied," Appellees' request for attorneys' fees and costs of litigation under Section 1304(a) of the RTKL, 65 P.S. § 67.1304(a), is denied.

### ORDER

AND NOW, this 16th day of February, 2011, the trial court's decision granting intervenor status to A Second Chance, Inc. is AFFIRMED. The April 8, 2010 decision and order of the trial court is AFFIRMED in part and VACATED in part. The matter is REMANDED for further proceedings consistent with the foregoing opinion. Appellees' request for attorneys' fees and costs of litigation is DENIED.

Jurisdiction relinquished.

