**[J-65-2024] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| PENNCREST SCHOOL DISTRICT, | : | No. 31 WAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered April |
| | : | 24, 2023, at No. 1463 CD 2021, |
| v. | : | Vacating the Order of the Court of |
| | : | Common Pleas of Crawford County |
| | : | entered December 16, 2021, at No. |
| THOMAS CAGLE, | : | AD 2021-486, and Remanding. |
| | : | |
| Appellant | : | ARGUED:  October 9, 2024 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                    **DECIDED: AUGUST 19, 2025**

Today, this Court endeavors to identify the circumstances in which a Facebook post constitutes a "record" for purposes of the Right-to-Know Law ("RTKL").  The RTKL defines a "record" as "[i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency."[1] The Majority "reaffirm[s] that [the RTKL's] two-part inquiry is the only test to be utilized when determining whether disclosure of information . . . is required under the statute."[2] With that, I agree.  I agree as well that the RTKL's reach extends to digital records, such as emails and social media posts, and that Penncrest School District is an agency to which the RTKL applies.

---

[1]      65 P.S. § 67.102.

[2]      Maj. Op. at 26.

My disagreement with the Majority stems from its approval of the Commonwealth Court's decision to announce a list of factors that "must" be used in determining whether a social media post constitutes a record.[3] The Majority labors to minimize this pronouncement, insisting with undue optimism that, "[i]n our view, the Commonwealth Court did not adopt a social-media specific test. . . ."[4] Perhaps recognizing (while not conceding) that the Commonwealth Court had done just that, the Majority adds for good measure that, "to the extent the lower court's analysis can be interpreted as such, we reject that notion."[5] But there was nothing "notional" about what the Commonwealth Court said here. The Commonwealth Court did not leave open for "interpret[ation]" the question of whether or not it was "adopt[ing] a social-media specific test." It adopted such a test explicitly. The Majority chooses to "find that the Commonwealth Court's decision is not in tension with [the RTKL's] test but rather, articulates reasonable facts that warrant consideration when resolving whether a social media post constitutes an agency record. . . ."[6] I disagree.[7] The Commonwealth Court's analysis adds language not found in the RTKL, thereby frustrating the statutory mandate rather than vindicating it.

After reviewing case law related to disclosure of emails, the Commonwealth Court opined that social media "may require a different analytical framework" than that used in

---

[3]     *See Penncrest Sch. Dist. v. Cagle*, 293 A.3d 783, 800-02 (Pa. Cmwlth. 2023).

[4]     Maj. Op. at 24.

[5]     *Id.*

[6]     *Id.* at 26.

[7]     The Concurring and Dissenting Opinion ("CDO") views this disagreement as evidence that the statute is ambiguous. CDO at 1-2. It is not. It is a dispute regarding whether various factors should be layered onto the plain text of the statute in order to effectuate it.

the email cases.[8]  The court then explored social media cases arising in the Office of

Open Records ("OOR"), out-of-state decisions, and federal civil rights proceedings under

42 U.S.C. § 1983 that included adjudication of whether a state actor was acting in an

official capacity.   Initially, acknowledging the RTKL and cases interpreting it, the

Commonwealth Court stated that, in order for a social media post to be subject to

disclosure:

> (1) it must prove, support, or evidence an agency's transaction or activity;
> (2) it was created, received, or retained in connection with an agency's
> transaction, business, or activity; and (3) it was created by, originated with,
> or possessed by the agency.[9]

However, deciding that it was "not faced with such a seemingly straightforward

analysis . . .,"[10] the Commonwealth Court proceeded to identify the crucial issue as

whether the "social media post documents a transaction or activity *of the school board*."[11]

The court rejected the idea that the content alone could determine whether the post was

"of the agency," because that content would not be determinative of whether the post was

made in the school board member's official capacity.   Accordingly, the Commonwealth

Court declared, "we must consider the following nonexclusive factors:"[12]

> First, we examine the social media account itself, including the private or
> public status of the account, as well as whether the account has the
> "trappings" of an official agency account.  We must also consider whether
> the school board member has an actual or apparent duty to operate the

---

[8]     *Penncrest Sch. Dist.*, 293 A.3d at 793; *see id.* at 791-92 (discussing email cases including *In re Silberstein*, 11 A.3d 629 (Pa. Cmwlth. 2011); *Mollick v. Twp. of Worcester*, 32 A.3d 859 (Pa. Cmwlth. 2011); *Barkeyville Borough v. Stearns*, 35 A.3d 91 (Pa. Cmwlth. 2012); *Easton Area Sch. Dist. v. Baxter,* 35 A.3d 1259 (Pa. Cmwlth. 2012)).

[9]     *Id.* at 798-99.

[10]    *Id.* at 800.

[11]    *Id.* (emphasis in original).

[12]    *Id.*

account or whether the authority of the public office itself is required to run the account. Focusing *only* on the trappings of the account, *i.e.,* its appearance or purpose, is likely not dispositive, as we must also examine the universe of responsive posts.

Second, in examining the school board member's social media posts, we consider the following. Initially, whether such posts prove, support, or evidence a transaction or activity *of an agency.* In resolving the above, the content of the posts may be reviewed to address whether the posts were merely informational in nature, *i.e.,* did not directly prove, support, or evidence the agency's governmental functions. We also address whether the posts were created, received, or retained by law or *in connection with* a transaction, business, or activity of an agency.

Third, we consider "official capacity" with regard to the account and the posts. Although the RTKL does not explicitly define "official capacity," we previously addressed whether the information at issue was produced under the agency's authority or subsequently ratified, adopted, or confirmed by the agency, *i.e.,* authorized activity. We explained that the information at issue must be created, received, or retained by public officials in their official capacity, *i.e.,* scope of employment, as public officials. We may consider whether the agency required the posts, the agency directed the posts, or whether the posts furthered the agency's interests.[13]

Unlike today's Majority, I am unable to view the Commonwealth Court's factors (which factors it held it "must" consider) as merely suggestive. The Commonwealth Court created a new test, announcing extra-statutory factors of its own design for social media cases.

While denying that the Commonwealth Court adopted such a test, the Majority implicitly concedes that the Commonwealth Court in fact did so: "to the extent the lower court's analysis can be interpreted as [a test], we reject that notion."[14] When a reviewing court lists factors that must be considered, it has created a test that it and lower tribunals must follow. The Majority is correct to reject this non-test test as such even though it

---

[13]     *Id.* at 800-02 (internal citations and footnotes omitted; emphasis in original).

[14]     Maj. Op. at 24.

perceives it as merely notional. In addition to imposing a judicial gloss upon the statutory rubric, the Commonwealth Court's test is unnecessary. The statutory mandate suffices.

But the Majority does not reject the Commonwealth Court's rationale. The Majority endorses consideration of non-statutory factors when addressing whether a record is "of an agency," and it scolds the trial court for "fail[ing] to consider a host of different factors when assessing whether the Facebook posts documented a transaction or activity 'of an agency.'"[15] The Majority opines that the Commonwealth Court merely listed factors that have been considered in other cases. Having reviewed the cases cited by the Majority, I disagree. Those cases explored the statutory test; they did not prescribe additional factors.

For example, in *Barkeyville Borough v. Stearns*,[16] the requestors sought, among other things, emails exchanged between borough council members. The "OOR concluded that the emails reflecting council business that are in the possession of individual Council members and located on their personal computers are within the Borough's control. . ."; as such, the emails had to be turned over to the requestors.[17] On appeal, the Commonwealth Court determined that the emails documented a transaction or activity of the agency because they showed council members discussing a land development deal. Additionally, since the emails were created by council members, the court ruled that the emails were created in connection with an activity of the agency. The court also concluded that the council members were acting in an official capacity because the emails documented their consideration of council business. Hence, the emails were records within the meaning of the RTKL.

---

[15] *Id.*

[16] 35 A.3d 91 (Pa. Cmwlth. 2012).

[17] *Id.* at 93.

Turning to whether the records were public and, thus, subject to disclosure, the *Stearns* court assessed whether those records were in the control of the council. Because the "borough, made up of individual council members, acts and carries out its duties through its council members," the court determined that the emails were within the constructive possession of the borough, even though they were located on personal computers.[18]

Finally, the court turned to whether the emails were records "of an agency." The court noted that permitting council members to evade the RTKL by using private email accounts to conduct business would undermine the RTKL. The court concluded:

> [T]he emails between individual Council members are "of" the Borough. The emails sought by Requesters are emails *created* by public officials, in their capacity as public officials, for the purpose of furthering Borough business. The Borough created the information sought, because, as previously discussed, the individual Council members make up the Borough government.[19]

Thus, in its analysis of official capacity and whether a record was "of an agency," the *Stearns* court applied the statutory test.

In *Easton Area School District v. Baxter*,[20] the requestor sought all emails sent and received during a one-month period by nine school board members and the superintendent, and at the general school board email address. Answering the question of whether all emails sent to or from agency email addresses and stored on agency computers must be records of the agency, the court concluded that neither the particular email address that was used nor the storage location proved that the emails were records

---

[18]  *Id.* at 96.

[19]  *Id.* at 97 (emphasis in original).

[20]  35 A.3d 1259 (Pa. Cmwlth. 2012).

*per se*. Instead, these would constitute records if they "document the agency's transactions or activities."[21]

The school district argued that an email from one board member could not document a transaction of the agency because one member did not have the ability to bind the board. The *Baxter* court rejected that argument, stating that, "[w]hile an individual school board member lacks the authority to take final action on behalf of the entire board, that individual acting in his or her official capacity, nonetheless, constitutes agency activity when discussing agency business."[22] As in *Stearns*, the court discussed official capacity, but did not add to the statutory test. The court remained focused upon the content of the document as the determinative feature of that document's status as a record. The lack of an ability to bind the agency did not preclude a finding that an email was a record of the agency.

By contrast, in *Bagwell v. Office of the Attorney General*,[23] the Commonwealth Court held that an email was not a record subject to disclosure. There, the requestor sought an email that a judge sent from his personal account to a former member of the Office of the Attorney General. The email apparently contained the judge's personal thoughts and criticisms of an investigation. The email had been provided to a lawyer who had been appointed by the Attorney General to conduct a review of the criticized investigation. The court noted that the fact that an email was sent from a personal account does not automatically preclude it from being deemed a record of the agency; conversely, an email in an agency's possession is not a record if it pertains only to

---

[21]    *Id.* at 1264.

[22]    *Id.*

[23]    1651 C.D. 2914, 2015 WL 5123089 (Pa. Cmwlth. 2015) (memorandum opinion).

personal matters.[24] The court concluded that, because the email contained the judge's personal thoughts and comments, it did not document an activity or transaction of the agency.[25] Rather than adding to the statutory test, the *Bagwell* court examined the circumstances and content of the document in order to determine whether it was a record pursuant to the RTKL.[26]

In *Purdy v. Borough of Chambersburg*,[27] the requestor sought, among other things, Facebook posts on a mayor's public page related to a mural proposal that had been presented to the borough council. The OOR deemed immaterial the question of whether the borough authorized the mayor's Facebook page. The OOR focused instead upon the fact that the borough acts through its elected officials, including the mayor, the fact that the mayor has multiple areas of civic responsibility, the fact that the page was listed on the borough's official website, and the fact that the "page contains discussions and posts regarding activities within the Borough, including those relating to the police department and councilmembers, and contains contact information for the Borough."[28]

In *Boyer v. Wyoming Borough*,[29] the OOR similarly determined that a mayor's Facebook page was a record, even though the borough council did not create or authorize the page. "Rather, the OOR looks at whether the content of the Facebook page shows

---

[24]    *Id.* at *2.

[25]    *Id.* at *3.

[26]    Because the court concluded that the email was not a record, it did not reach the Attorney General's second reason for declining to disclose the email—to wit, that it was subject to a sealing order from this Court. *Id.* at *3 n.11.

[27]    No.: AP 2017-1229, 2017 WL 3587346 (Pa. Off. Open Rec. filed Aug. 16, 2017).

[28]    *Id.* at *3.

[29]    No: AP 2018-1110, 2018 WL 4293461 (Pa. Off. Open Rec. filed Sept. 5, 2018).

that it is used as a significant platform by an elected official to conduct official business."[30]

As "[n]early all" of the posts related to borough business, the OOR concluded that the page was a record of the borough.[31, 32] While the OOR explored additional considerations, it was the content of the record that controlled the determinations.

The case law demonstrates that the content of the document is paramount.[33] The Commonwealth Court here concluded instead that content was not determinative. While the Commonwealth Court attempted to apply the statute within the context of social media, it created disclosure hurdles that appear to apply only to social media. For instance, the Commonwealth Court stated that tribunals must examine whether the record reveals "trappings" of an official account. This assertion is at odds with *Stearns* and *Bagwell*, both of which stated that it is immaterial whether an email comes from an agency

---

[30]    *Id.* at *3.

[31]    *Id.* at *4.

[32]    Upon appeal, the Commonwealth Court remanded *Boyer* so that the trial court could "apply [the] analytical framework" it created in this case. *Wyoming Borough v. Boyer*, 299 A.3d 1079, 1086 (Pa. Cmwlth. 2023).

[33]    The CDO overstates my position. *See* CDO at 5-6. As shown by the cases discussed above, content is the most important consideration. I do not suggest that all other facts are meaningless in all cases. Here, the content suffices to manifest that the posts are records. The Commonwealth Court did not need to add other factors.

As to the CDO's hypotheticals — the text to the school board member's wife and the diary entry — the Commonwealth Court has held that personal emails "are simply not records." *Baxter*, 35 A.3d at 1264. While this Court has not had the opportunity to review such a case, and while I take no settled position on factual scenarios that are not before us, it seems likely that those hypothetical situations would involve personal, rather than agency, records. Even if the Court were to determine that such communications met the definition of records, it seems likely that they would not be public records. A public record is a record of an agency that is not protected by a privilege or is not subject to an exception enumerated in Section 708 of the RTKL. 65 P.S. § 67.102. In the CDO's hypotheticals, either an exception or privilege likely would apply. *See, e.g.,* 65 P.S. § 67.708(b)(12) (excepting from disclosure notes prepared by an official or agency employee for personal use).

or private email account. It is the content, rather than the "trappings" of the account, that matters. While social media is not the same as email, there is neither reason nor license to improve upon or supplement the statutory test.

"In discerning whether records qualify as records 'of' a particular agency, we consider the subject-matter of the records."[34] It is the content of the record that matters. The statutory test is all that is needed to illuminate that content. The Commonwealth Court's factors go beyond that statutory test. I would not endorse those factors. The RTKL expanded access to public records. It must be construed liberally to allow that access.[35] Records of agencies are presumed to be public. The burden is on the agency to prove otherwise.[36] Given the statute's transparency mandate, courts should not engraft additional requirements that could be used to narrow the broad access that the statute envisions.

I would reverse the Commonwealth Court's decision. I would reinstate the trial court's order requiring Penncrest School District to disclose the responsive Facebook posts.

Justice Donohue joins this dissenting opinion.

---

[34] *Grine v. Cnty. of Ctr.*, 138 A.3d 88, 95 (Pa. Cmwlth. 2016).

[35] *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 381 (Pa. 2013) ("[C]ourts should liberally construe the RTKL to effectuate its purpose of promoting 'access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'") (quoting *Allegheny County Dept. of Admin. Services v. A Second Chance, Inc.,* 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011)).

[36] *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 457 (Pa. 2013) ("In 2008, the General Assembly enacted the RTKL. . . and provided for significantly broadened access to public records. Under the new law, agency records are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged. . . . [T]he relevant government agency bears the 'burden of proving . . . by a preponderance of the evidence' that an exception applies.").