# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Highmark Inc.,                          :
                Petitioner              :
                                :   No. 1325 C.D. 2016
        v.                      :   Argued: March 8, 2017
                                :
Christopher L. Voltz, Esq.,             :
                Respondent              :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

**OPINION**
**BY JUDGE SIMPSON**               **FILED: June 2, 2017**

Highmark, Inc. (Highmark) petitions for review of a final determination issued by the Office of Open Records (OOR) granting the request of Christopher L. Voltz, Esquire (Requester) pursuant to the Right-to-Know Law (RTKL),[1] and directing the Insurance Department (Department) to release provider reimbursement rate information Highmark submitted. Highmark argues the information is protected by another state law, and it is confidential proprietary information under Section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11). Highmark contends it presented sufficient evidence to support nondisclosure. Additionally, Highmark asserts OOR violated its due process rights, and on that basis, it asks this Court to accept supplemental evidence. Because OOR erred as a matter of law, we reverse.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

## I. Background

On March 11, 2016, Requester submitted a request seeking:

(1) All documents submitted by Highmark to the [Department] regarding reimbursement adjustments for physical therapy, allergy testing and venipuncture services, including, without limitation, correspondence filings and competitor and market performance data related to Highmark's Special Bulletin dated July 22, 2015, wherein Highmark states that Highmark has filed with, and has now received approval from, the [Department] to implement Premier Blue Shield and Keystone Health Plan West (KHPW) reimbursement adjustments;

(2) [a]ll documents submitted by Highmark to [the Department], including, without limitation, correspondence, filings and competitor and market performance data, relating to Highmark's Special Bulletin dated February 15, 2016 (revised February 17, 2016)[,] concerning Highmark's adjustment to its provider fee schedule to implement new fees for its [KHPW] and Premier Blue Shield ACA individual (direct-pay) products; and,

(3) [a]ll documents evidencing the [Department's] approval, disapproval or other response to Highmark's above-described submissions to the [Department] ….

Reproduced Record (R.R.) at 10a (Request).

The Department denied the Request, stating the records were confidential proprietary information or trade secrets of Highmark under Section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11). The Department noted that Highmark "objected to the release of such records." R.R. at 19a.

Requester appealed to OOR, requesting *in camera* review. In addition to the Request and response, Requester submitted emails between the Department and the Pennsylvania Physical Therapy Association (PTA). OOR invited the parties to supplement the record and directed the Department to notify third parties, (*i.e.*, Highmark), of their ability to participate in the appeal.

Highmark filed a brief asserting the records were protected confidential proprietary information under Section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11). In addition, Highmark asserted Section 309 of the Accident and Health Filing Reform Act (Reform Act),[2] 40 P.S. §3801.309, and Section 6329 of the Professional Health Services Plan Corporations Act (HPCA), 40 Pa. C.S. §6329, exempted rate information submitted to the Department. Highmark also submitted an affidavit of its Director of Regulatory Affairs (Highmark Affidavit) attesting the records were part of a provider reimbursement filing with the Department, marked confidential. The Department submitted no evidence, deferring to Highmark.

Requester submitted a letter brief and an affidavit of the PTA attorney who corresponded with Department counsel (PTA Affidavit). Therein, the attorney confirmed the Department advised PTA that Highmark's submissions were not voluntary, but were required by Section 6329 of the HPCA. PTA Affidavit, ¶9. Highmark submitted a reply brief responding to Requester's legal arguments.

Neither the parties nor Highmark requested a hearing. OOR denied Requester's request for *in camera* review.

---

[2] Act of December 18, 1996, P.L. 1066.

Ultimately, OOR determined Highmark did not meet its burden to prove an exemption under the RTKL or other state law. Voltz v. Ins. Dep't & Highmark, Inc., OOR Dkt. AP 2016-0773 (filed July 5, 2016) (Final Determination). OOR reasoned the Reform Act did not exempt the rates at issue because only "[p]ayment rates and fees requested by the [D]epartment shall be given confidential treatment." 40 P.S. §3801.309(c) (emphasis added). OOR found no evidence that the Department "requested" the payment rate or fee information, so the provision did not apply. OOR rejected Highmark's argument that rate information must be filed with the Department under Section 6329 of the HPCA, emphasizing the partial repeal of Section 6329(a) "insofar as [it] provides for the approval of rates and contracts." Section 5101 of the Reform Act, 40 P.S. §3801.5101 (emphasis added). Because Highmark did not submit the rate information pursuant to the Department's explicit request, OOR determined the Reform Act did not protect it.

OOR also reasoned the requested records did not qualify as financial records because they did not relate to an agency disbursement. In addition, OOR found the Highmark Affidavit insufficient evidence to prove the rate information was confidential proprietary information or trade secrets under Section 708(b)(11) of the RTKL. Accordingly, OOR directed disclosure of the records.

Highmark filed a petition for review.[3] The Department did not participate. After briefing and argument, the matter is ready for disposition.

---

[3] Highmark participated in the proceedings before OOR pursuant to Section 1101(c) of the RTKL, 65 P.S. §67.1101(c) as a direct-interest participant. Although the RTKL does not expressly confer an appeal right on such participants, our Court recognizes a third-party contractor has a due process right to protect information in which it maintains a property interest. W. Chester Univ. v. Schackner (Bravo), 124 A.3d 382 (Pa. Cmwlth. 2015).

4

## II. Discussion

On appeal,[4] Highmark contends OOR erred in holding: (1) the rate information was not protected from disclosure under the insurance statutes; and, (2) in holding Section 708(b)(11) of the RTKL did not protect the rate information. It argues the Highmark Affidavit substantiated that the exemptions applied, and OOR erred in deeming the evidence insufficient.

Highmark also challenges the adequacy of the proceedings, claiming OOR violated its due process rights by directing disclosure without a hearing. Additionally, Highmark asks this Court to grant its application to supplement the record.

Requester counters that Highmark did not meet its burden to prove the asserted exemptions. He argues the Highmark Affidavit was insufficient proof of any competitive harm, so OOR properly ruled in his favor. He maintains the Reform Act does not exempt the requested information because the Department did not request the rates here, which is a precondition to their protection. He also asserts the partial repeal of Section 6329(a) of the HPCA amounted to a total repeal because that part pertained to approval, and approval was no longer required.

### A. RTKL Framework

Section 305 of the RTKL provides that records in possession of a Commonwealth agency like the Department are presumed "public" unless they

---

[4] "For a question of law under the RTKL, our scope of review is plenary." Bagwell v. Dep't of Educ., 76 A.3d 81, 86 (Pa. Cmwlth. 2013) (en banc).

5

are: (1) exempted by Section 708 of the RTKL; (2) protected by a privilege; or (3) exempted "under any other Federal or State law or regulation or judicial order or decree." 65 P.S. §67.305 (emphasis added). State statutes that designate public or nonpublic nature supersede the RTKL. Section 306 of the RTKL, 65 P.S. §67.306; Dep't of Labor & Indus. v. Heltzel, 90 A.3d 823 (Pa. Cmwlth. 2014) (en banc).

This Court recognizes a third party's interest in protecting its records in an agency's possession that may not be waived by the agency. Dep't of Educ. v. Bagwell, 131 A.3d 638 (Pa. Cmwlth. 2016) (Bagwell (2016)); Dep't of Conserv. & Natural Res. v. Vitali (Pa. Cmwlth., No 1013 C.D. 2014, filed July 7, 2015) (unreported) (remanding to allow third party to prove exemption before factfinder). Indeed, a direct interest party who submitted the records at issue to an agency may be in the best position to establish their protected nature. Bagwell (2016).

The party asserting an exemption bears the burden of proving the exemption applies. See, e.g., Global Tel*Link Corp. v. Wright, 147 A.3d 978 (Pa. Cmwlth. 2016) (party with confidential proprietary interest in financial submission appealed, and established RTKL exception applied); Dep't of Corr. v. Maulsby 121 A.3d 585 (Pa. Cmwlth. 2015) (remanding to OOR to allow third party to participate and challenge release of confidential proprietary information); see also Allegheny Cnty. Dep't of Admin. Servs. v. Parsons, 61 A.3d 336, 342 (Pa. Cmwlth. 2013) (third-party contractors wear "shoes of [an] agency for purposes of the burden of proof when the contractor performs a governmental function …."). Under Section 708(a)(1), a party bears the burden of proving any RTKL exception applies "by a preponderance of the evidence." 65 P.S. §67.708(a)(1).

6

## B. Due Process – Supplementing the Record

Before reaching the merits, we consider Highmark's due process claim. This Court construes the RTKL to afford due process to third parties, including the ability to submit evidence and assert exemptions at the appeals officer level. Maulsby; W. Chester Univ. v. Schackner (Bravo), 124 A.3d 382 (Pa. Cmwlth. 2015). When a RTKL request seeks confidential proprietary information that a third party submitted to an agency, we recognize that third party's right to due process before disclosure. See, e.g., Office of the Governor v. Bari, 20 A.3d 634 (Pa. Cmwlth. 2011) (remanding for hearing so third party may prove exception).

In the RTKL context, a right to due process does not entail a right to a hearing. Giurintano v. Dep't of Gen. Servs., 20 A.3d 613 (Pa. Cmwlth. 2011). The essential elements for due process before an OOR appeals officer are notice and an opportunity to be heard. Wishnefsky v. Dep't of Corr., 144 A.3d 290 (Pa. Cmwlth. 2016). An appeals officer has discretion in developing the record to allow meaningful appellate review. Dep't of Educ. v. Bagwell, 114 A.3d 1113 (Pa. Cmwlth. 2015) (Bagwell (2015)). To develop the record, an appeals officer may undertake *in camera* review or request submissions as to material facts. Id.; Office of Open Records v. Center Twp., 95 A.3d 354 (Pa. Cmwlth. 2014) (en banc).

Generally, this Court declines to serve as factfinder, a "role … best reserved for unique occasions" like maximizing efficiency. Heltzel, 90 A.3d at 834. Where OOR's "record contains no information on [records'] nature and content," we may supplement the record. Pa. State Police v. Grove, 119 A.3d 1102, 1105-06 (Pa. Cmwlth. 2015), appeal granted, 133 A.3d 292 (Pa. 2016) (emphasis added).

Highmark contends OOR violated its due process rights by failing to hold a hearing before directing disclosure of the rate information. Highmark asserts its proprietary rights in nondisclosure are property rights warranting further development of the record before this Court or on remand. We are unpersuaded.

Highmark suggests "OOR's failure to adequately develop the record" violated its due process rights. Reply Br. at 12. However, Highmark's argument is premised on the lack of due process afforded to third parties by the RTKL, without regard to the adequacy of the process afforded here at the fact-finding stage before OOR.

Highmark had both notice and an opportunity to be heard before OOR. OOR recognized Highmark's direct interest when it allowed participation in the administrative proceedings pursuant to Section 1101(c) of the RTKL, 65 P.S. §67.1101(c). Highmark submitted two briefs in support of its legal position, and evidence in support of its factual allegations in the Highmark Affidavit. OOR reviewed and considered Highmark's submissions. See Final Determination.

Moreover, there is no indication that OOR denied Highmark an opportunity to submit additional evidence. Highmark did not request a hearing. Thus, Highmark cannot demonstrate that OOR did not afford Highmark ample opportunity to prove the asserted exemptions.

Contrary to Highmark's contentions, it is not incumbent upon OOR to request additional evidence when developing the record. Rather, it is the parties'

burden to submit sufficient evidence to establish material facts. Here, Highmark did not distinguish between assertions in briefs and sworn statements in affidavits. Pet'r's Br. at 52. OOR properly recognized unsworn statements are not evidence. Bagwell (2015).

In short, Highmark had a full opportunity to establish the exemptions before OOR. That the evidence Highmark submitted was found wanting by OOR does not mean the procedure was flawed. Because Highmark identified no flaws in the process before OOR, in which it fully participated, we discern no due process violation.

We also discern no cause to consider additional evidence here. Critically, Highmark offers no explanation for not submitting the evidence comprised in its request to supplement the record when it had the chance to do so before OOR. Therefore, we decline to review the additional evidence as factfinder, or to remand to OOR to open the record to accept this evidence. To allow a remand under these circumstances amounts to giving Highmark the proverbial second bite at the apple.

**C. Merits**

Highmark argues OOR committed legal error when it did not construe the relevant insurance statutory provisions together. Highmark maintains the records are protected by Section 309 of the Reform Act, 40 P.S. §3801.309, because Section 6329 of the HPCA, 40 Pa. C.S. §6329, requires filing of payment rates and fees with the Department. That the Department no longer approves the

9

rates does not alter the overall statutory scheme that mandates filing of such rates and fees with the Department before they take effect.

Requester construes the exemption in Section 309 of the Reform Act strictly, to apply only to rate information that the Department explicitly requested. 40 P.S. §3801.309. He argues OOR properly concluded the Reform Act does not exempt the rates because the precondition of a Department request was not met. Requester contends that such rates do not need to be filed pursuant to Section 6329 of the HPCA because Highmark is no longer required to submit applications for approval based on the repealer in Section 5101 of the Reform Act, 40 P.S. §3801.5101. As a consequence of repealing the approval requirement, there is no reason for submitting the rates.

There is no dispute as to the following facts. Highmark submitted a provider reimbursement filing containing the requested information to the Department through the System for Electronic Rate and Form Filing (SERFF). Highmark Affidavit, ¶4. Highmark marked its rate information "Confidential and Proprietary," believing it was protected from disclosure under Section 309(c) of the Reform Act. Id. ¶¶7, 12. Highmark continued to request "approval" for its filings, despite the repeal of the approval requirement. Since the repeal of the approval requirement, applications are deemed approved, and their receipt is acknowledged, not approved. After receiving Highmark's submission through SERFF, the Department acknowledged receipt, and it marked the filing "closed." Id. ¶¶10, 14.

10

## 1. Insurance Statutes

Highmark asserts an exemption from disclosure under "any other … State law." Section 305(a)(3) of the RTKL, 65 P.S. §67.305(a)(3). Here, the other state laws are the Reform Act and the HPCA (collectively, Insurance Statutes).

The HPCA is the enabling legislation for the Pennsylvania Blue Plans. Section 6329 of the HPCA provides, with emphasis added:

> (a)    General rule.— All rates charged subscribers or groups of subscribers by any professional health service corporation, and the form and content of all contracts between any such corporation and its subscribers or groups of subscribers, all methods and rates of payment by such corporation to health service doctors serving its subscribers, all acquisition costs in procuring subscribers, the reserves to be maintained by such corporation, and all contracts entered into by any such corporation and extending over a period of more than one year or calling for the expenditure by the corporation of any amount in excess of 20% of its reserves, shall be approved by the [D]epartment before they become effective.

> (b)    Procedure.— Every application for such approval shall be made to the [D]epartment in writing and shall be subject to the provisions of subsections (c) through (f) of section 6102 of this title (relating to certification of hospital plan corporations), except that the [D]epartment may substitute publication in the Pennsylvania Bulletin of notice of reasonable opportunity to submit written comments for publication of opportunity for hearing in any case where the right to an oral hearing is not conferred by the Constitution of the United States or the Constitution of Pennsylvania. Within 60 days after the filing of the application[,] the [D]epartment shall approve or refuse such application.

40 Pa. C.S. §6329. However, Section 5101 of the Reform Act partially repealed the above provision as follows:

(b)  Partial.—the following acts and parts of acts are repealed to the extent specified:

****

40 Pa. C.S. §§6124(a) and 6329(a), insofar as they provide for the approval of rates and contracts.

40 P.S. §3801.5101 (emphasis added).

Section 309(c) of the Reform Act states in its entirety:

Provider contracts filed under this section need not contain payment rates and fees unless requested by the [D]epartment. Payment rates and fees requested by the [D]epartment shall be given confidential treatment, are not subject to subpoena and may not be made public by the department, except that the payment rates and fee information may be disclosed to the insurance department of another state or to a law enforcement official of this State or any other state or agency of the Federal Government at any time so long as the agency or office receiving the information agrees in writing to hold it confidential and in a manner consistent with this chapter.

40 P.S. §3801.309(c) (emphasis added).

OOR concluded it was unnecessary to construe the Insurance Statutes together because the Reform Act repealed the approval of rates and contracts. As a result, it determined "the filing and review of provider contracts and provider rate information is governed solely by the Reform Act, which only affords confidential treatment to 'payment rate and fee information' *requested* by the Department." Final Determination at 7 (emphasis in original). We disagree.

OOR's analysis disregarded that the remainder of Section 6329 of the HPCA was intact, in full force, and subject to implementation by the Department.

12

OOR's strict construction of the exemption in Section 309(c) of the Reform Act is incongruent with the submission requirements of the HPCA, as well as inconsistent with the Department's interpretation, which is entitled to deference.

> As to administrative deference, our Supreme Court holds:
>
> It is well-settled that when the courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation. Thus, our courts will not disturb administrative discretion in interpreting legislation within an agency's own sphere of expertise absent fraud, bad faith, abuse of discretion or clearly arbitrary action.

Winslow-Quattlebaum v. Md. Ins. Grp., 752 A.2d 878, 881 (Pa. 2000) (emphasis added) (citations omitted). The Department is entitled to such deference in its construction of the Insurance Statutes because "[it] is specifically delegated administration and enforcement of insurance matters." Id.

The Department construed the Insurance Statutes consistent with Highmark's proffered construction. Specifically, in response to an argument that the Reform Act did not protect the requested information, the Department explained Section 6329(a) of the HPCA requires Highmark to file rates with the Department, which rates include a doctor of chiropractic as well as a licensed physical therapist. R.R. at 26a-27a. The Department emphasized in an email forwarded by PTA's counsel that "because Highmark is required to file the rates, it cannot be said that Highmark 'voluntarily' provided them to the Department." Id. at 27a. "Rather, a statutory requirement to file the rates is tantamount to a

13

'request' from the Department. Thus, the rates may fairly be said to have been 'requested by the Department,' as specified in [Section 309(c)], and therefore confidential as a matter of statute." Id.

Significantly, Requester acknowledged that prior to submitting his Request, counsel for the Department stated: "Highmark must file health service doctor rates, including physical therapy rates, with the Department and, therefore, Highmark's submissions are not 'voluntary.'" See Certified Record (C.R.), Item No. 6, Requester Submission to OOR, at 3, ¶7. Highmark refers to this practice as a "file and use" requirement, which replaced the approval requirement after its repeal. Pet'r's Br. at 23.

Based on the Department's construction of the Insurance Statutes, OOR erred in determining only the Reform Act governed the rate information. The Reform Act and the HPCA must be construed in *pari materia* as they pertain to the same subject matter and are part of the same regulatory scheme. 1 Pa. C.S. §1932. Further, Section 5101 of the Reform Act specified a *partial* repeal of Section 6329(a) of the HPCA that applied only to the approval of rates and contracts. 40 P.S. §3801.5101.

"[T]he rules of statutory construction require that 'whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage.'" Winslow-Quattlebaum, 752 A.2d at 881 (quoting 1 Pa. C.S. §1921(a)). Moreover, we construe statutory provisions so as to avoid an absurd result or one that is unworkable. 1 Pa. C.S. §1922(1).

14

Aside from his disregard of the deference due the Department, Requester's suggested interpretation is inconsistent with these statutory construction principles. First, his proffered construction of the repealer ignores that Section 6329(a) of the HPCA remained intact other than the "approval" requirement for rates and contracts. Construing Section 6329 of the HPCA as Requester suggests would render almost the entirety of the remaining provisions mere surplusage.

Second, from a practical perspective, the statute is rendered unworkable if the repealer functioned as a total repeal based on the removal of the word "approve." Requester's construction offers no basis for implementing or construing Section 6329(b) of HPCA, which also remained intact. Now applications are deemed approved and acknowledged, instead of "approved." Requester also does not account for the submission of the rate information and its acknowledgement. That the rates are acknowledged or "deemed approved" presupposes submission of something to the Department.

The repealer is not a model of clarity as to how the intact provisions of Section 6329 of the HPCA operate. Repealing the term "approve" (as to rates and contracts) without replacing it with another term, such as file or submit, creates an ambiguity. In such cases, we employ statutory construction principles to discern intent. Therefore, to give full effect to this provision, we consider the following: "the occasion and necessity for the statute …; the circumstances under which [it] was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including [those] upon the same or similar subjects; the

15

consequences of a particular interpretation; and administrative interpretations of such statute" by the Department.  Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co., 131 A.3d 977, 984 (Pa. 2016) (citing 1 Pa. C.S. §1921(c)).

Following these principles, and to give effect to the statutory scheme, we construe the HPCA to mean "file and use" as Highmark and the Department have construed it.  Interpreting the HPCA in this manner gives effect to the remaining language, and is consistent with the Department's implementation and interpretation of the statutory scheme.  Thus, we conclude Highmark was required to file the rate information under the HPCA.

During oral argument, Requester conceded that the Reform Act would exempt the rate information, had the Department *requested* the information from Highmark.  Highmark contends the request need not be in writing or explicit, and is not necessary when another statute requires filing of the information at issue. We agree.

The meaning of "requested" in the context of the statutory exemption here does not entail that rates must be specially requested by the Department to be confidential without regard to the parties' course of conduct or other laws.  The "request" language in Section 309(c) of the Reform Act is satisfied when the Department requires filing of rate information under Section 6329 of the HPCA. Essentially, the statutory requirement obviates a need for a separate Department request.

16

In sum, OOR erred in reasoning it was unnecessary to construe the Insurance Statutes *in pari materia* based on the repealer. In so doing, OOR disregarded the partial nature of the repeal and erred in its statutory construction. Here, Section 309(c) of the Reform Act provided a statutory exemption for the rate information, despite lack of an explicit Department request, because Highmark submitted the information, and it came into the Department's possession pursuant to the file and use provisions in Section 6329 of the HPCA. Therefore, we reverse OOR's order directing disclosure.

## 2. Record of an Agency

In the interest of completeness, we also consider the implication of Requester's argument that records submitted to an agency by a third party, when not required by that agency, are subject to access under the RTKL.

The RTKL provides a means of access to government records. However, the statute applies only to "records" of an agency. Although all records in an agency's possession are presumed public, not all records within an agency's possession qualify under the definition of record in Section 102 of the RTKL, 65 P.S. §67.102. Under the definition, a "record" qualifies for access through the RTKL when it "documents a <u>transaction or activity of an agency</u> **and** that is created, <u>received</u> or retained <u>pursuant to law</u> or in connection with a transaction, business or activity of the agency." <u>Id.</u> (emphasis added). These definitional parameters are particularly significant for information that only came into an agency's possession because a third party submitted it.

17

Here, Highmark argued the rate information at issue was exempt because it submitted the information to the Department pursuant to the Insurance Statutes. Because the HPCA mandated submission, the Department received the information as part of its oversight and implementation of the statutory scheme. However, OOR rejected Highmark's argument.

Instead, OOR essentially agreed with Requester that there was no legal requirement to submit the rates, because the Reform Act repealed the approval requirement. Absent a legal requirement to submit the rate information, or an explicit request by the Department to submit it, "Highmark voluntarily submitted its provider payment rates to the Department …." Resp't's Br. at 25.

Taking Requester's argument to its logical conclusion, where it presumes Highmark submitted this information voluntarily, there is a tenuous connection to any agency action. Indeed, in the event the Department had no need for the rate information to perform its agency duties, and it was voluntarily submitted, the information would not qualify under the definition of "record." Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc., 13 A.3d 1025 (Pa. Cmwlth. 2011).

Highmark raised this argument to OOR in its reply brief. See C.R., Item No. 7, Highmark's Reply Br. at 3. However, OOR did not analyze whether the information Highmark submitted without a separate request by the Department qualified as a "record" under the RTKL. Accordingly, for this additional reason,

18

we hold the rate information is not accessible to Requester under the RTKL, and OOR erred in directing its disclosure.

### 3. Section 708(b)(11) of the RTKL

Because OOR erred as a matter of law in construing the Insurance Statutes, we reverse its order directing disclosure. Accordingly, it is unnecessary to address Highmark's argument under Section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11).[5]

### III. Conclusion

For the foregoing reasons, OOR's Final Determination is reversed. We also deny Highmark's application to supplement the record.

ROBERT SIMPSON, Judge

JJ. Cohn Jubelirer and Brobson did not participate in the decision in this case.

---

[5] Nevertheless, we caution that Highmark did not establish the critical components of this exception. Highmark bore the burden of proving the requested information is "confidential proprietary" or a "trade secret" as those terms are defined in Section 102 of the RTKL, 65 P.S. §67.102. Evidence of substantial harm to competitive position as result of disclosure is a prerequisite for showing proprietary nature. Dep't of Corr. v. Maulsby 121 A.3d 585 (Pa. Cmwlth. 2015). OOR determined Highmark did not establish that element because the affidavit did not address it.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Highmark Inc.,                          :
               Petitioner     :
                              :     No. 1325 C.D. 2016
          v.                           :
                              :
Christopher L. Voltz, Esq.,             :
               Respondent   :

## **O R D E R**

**AND NOW**, this 2nd day of June, 2017, the Office of Open Records' Final Determination is **REVERSED**, and **FURTHER**, the Petitioner's application to supplement the record is **DENIED**.

 

                                          _____
                                         ROBERT SIMPSON, Judge

Highmark Inc., :
    Petitioner :
         : No.  1325 C.D. 2016
    v. :
         : Argued:  March 8, 2017
Christopher L. Voltz, Esq., :
    Respondent :


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE ROBERT SIMPSON, Judge
     HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE JULIA K. HEARTHWAY, Judge
     HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION BY
JUDGE McCULLOUGH          FILED:  June 2, 2017


    I respectfully dissent because I do not believe that the provider reimbursement rate information submitted by Highmark, Inc. (Highmark) was requested by the Insurance Department (Department).  Hence, this information should not be deemed confidential under section 309(c) of the Accident and Health Filing Reform Act (Reform Act), Act of December 18, 1996, P.L. 1066, *as amended*, 40 P.S. §3801.309(c),[1] and thereby exempt from public disclosure under section 305(a)(3) of the Right-to-Know Law (RTKL).[2]

---

[1] Section 309(c) of the Reform Act provides as follows:

  Provider contracts filed under this section need not contain payment rates and fees unless requested by the department.

**(Footnote continued on next page…)**

As the Majority aptly notes, section 6329(a) of the Professional Health Services Plan Corporations Act (HPCA), 40 Pa.C.S. §6329(a), originally required the Department's approval of the following: all rates charged to subscribers; contracts between a professional health service corporation and its subscribers; all methods and rates of payment by such corporation to health service doctors; all acquisition costs in procuring subscribers; the reserves to be maintained by such corporation; and all contracts entered into by such corporation that extend for more than a year or which call for the expenditure of any amount in excess of 20% of the corporation's reserves. However, section 5101(b) of the Reform Act, 40 P.S. §3801.5101(b), partially repealed section 6329(a) of the HPCA insofar as it required Department approval of rates and contracts. As the Majority notes, Highmark referred to this repeal as a shift from an approval requirement to a simpler file and use requirement.

---

**(continued…)**

> Payment rates and fees requested by the department shall be given confidential treatment, are not subject to subpoena and may not be made public by the department, except that the payment rates and fee information may be disclosed to the insurance department of another state or to a law enforcement official of this State or any other state or agency of the Federal Government at any time so long as the agency or office receiving the information agrees in writing to hold it confidential and in a manner consistent with this chapter.

40 P.S. §3801.309(c).

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §67.305(a)(3). This section exempts from disclosure any record that "is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." *Id.*

As Highmark itself recognized in its brief, prior to the enactment of the Reform Act, the affirmative approval required by section 6329(a) of the HPCA proceeded in the manner set forth in section 6329(b), 40 Pa.C.S. §6329(b). (Highmark brief at 33.) Highmark correctly noted that in partially repealing section 6329(a) of the HPCA insofar as it relates to the approval of rates and contracts, the General Assembly intentionally did not modify section 6329(b) because there are categories of information provided in section 6329(a) that do not relate to rates and contracts, such as all costs in procuring subscribers and the reserves to be maintained by the professional health service corporation, which still require affirmative approval by the Department. *Id.* Highmark acknowledged that, by removing the approval requirement from section 6329(a) of the HPCA, but leaving the language of the section intact, the General Assembly has made clear that the procedure under section 6329(b) of the HPCA is no longer applicable with respect to rates and contracts and that the file and use framework of the Reform Act replaced the need for affirmative approval.[3] *Id.* at 33-34.

Moreover, while section 309 of the Reform Act does require insurers to file provider contracts and states that such contracts shall be reviewed by the Department, section 309(c) specifically provides, in pertinent part, that "[p]rovider contracts filed under this section need not contain payment rates and fees unless requested by the department." 40 P.S. §3801.309(c) (emphasis added). Given that these payment rates and fees no longer require approval under section 6329 of the HPCA, it follows that such information is no longer required by the Department.

---

[3] Indeed, section 5102(3) of the Reform Act provides that "[t]his act shall apply to all forms or rate filings made and all provider contracts filed after February 17, 1997." 40 P.S. §3801.5102(3).

Hence, as the provider reimbursement rate information was not requested by the Department, Highmark cannot take advantage of the confidential status afforded by section 309(c) of the Reform Act.

Nevertheless, given Highmark's legitimate belief that it was still required to submit this information to the Department and the fact that this appears to be a novel issue regarding the interplay between section 5101(b) of the Reform Act and section 6329(a) of the HPCA, I would grant Highmark's request to supplement the record regarding its claim that the requested information "constitutes or reveals a trade secret or confidential proprietary information" under section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11), but remand to the Office of Open Records to first consider this new evidence.

_____
PATRICIA A. McCULLOUGH, Judge