# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Golden Gate National Senior Care Center, d/b/a Golden Living, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1543 C.D. 2018 |
| | : | Argued: September 10, 2019 |
| Nicole Brambila and The Reading Eagle, and Pennsylvania Department of Health, and Skyline Healthcare, LLC, | : | |
| Respondents | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER               FILED: January 3, 2020

Golden Gate National Senior Care Center (Golden Living) petitions for review of a Final Determination of the Pennsylvania Office of Open Records (OOR) dated October 25, 2018, which denied in part, granted in part, and dismissed as moot in part a Right-To-Know Law[1] (RTKL) request (Request) made by Nicole Brambila of *The Reading Eagle* (collectively, Requesters) to the Department of Health (Department) pertaining to the transfer of six long-term care facilities (Facilities) from Golden Living to Skyline Healthcare, LLC (Skyline). Golden Living requests this Court reverse the Final Determination in part and conclude the records

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

pertaining to Golden Living are exempt from disclosure under the RTKL as either confidential proprietary information or as nonresponsive to the Request. Upon review, we affirm.

## I. Factual Background and Procedure

### A. *The Request and Department's Response*

On May 7, 2018, Requesters filed the Request with Department to obtain documents related to the transfer of the Facilities from Golden Living to Skyline. Specifically, Requesters sought the following:

> [(1)] [A]n opportunity to inspect or obtain copies of the public records the Department . . . reviewed (as the oversight agency) before approving Skyline['s] [] licensing and certification of several Golden Living[] nursing homes on or about Feb[ruary] 1, 2017. (Here is the list of former Golden Living homes: Phoenixville, Doylestown, Lancaster, Lansdale, Rosemont, Reading, and Stenton.)
>
> [(2)] [T]he management agreement as well as state documents that spell out the quality and/or financial criteria used for this approval.

(Reproduced Record (R.R.) at 6a.) After obtaining additional time to respond, Department filed a final response to the Request on June 25, 2018, granting the Request in part and denying it in part. Department provided records responsive to Item 1 of the Request, but redacted information in these records, including: individual home addresses, email addresses, and bank account numbers. (*Id.* at 16a.) Department denied Item 2 of the Request, explaining that the records pertaining thereto "are those that [the] [F]acilit[ies] deem[] to be trade secret or confidential proprietary, or that the Department deems to be pre-decisional and have been withheld" (Withheld Records). (*Id.* at 17a.)

2

*B. Appeal to OOR*

On July 9, 2018, Requesters appealed, in relevant part, Department's denial of Item 2.[2] Specifically, with respect to Item 2, Requesters challenged whether the Withheld Records were proprietary and whether Department erred by relying on the Facilities' assertions in determining which records contained confidential proprietary information. Department responded on July 19, 2018, reiterating its position that the responsive records to Item 2 were exempt from disclosure under the RTKL as confidential proprietary information. The next day, Requesters submitted a position paper reiterating their reasons for appealing Department's partial denial of the Request. In this position paper, Requesters requested the OOR to order Department to produce an exemption log describing the Withheld Records. Thereafter, Golden Living submitted a request to participate[3] in the appeal before the OOR, which was granted on July 20, 2018. Having been granted status as a direct interest participant, Golden Living submitted a position paper and an affidavit in support of its arguments, to which Requesters responded on August 3, 2018. Requesters filed an additional response on August 21, 2018, requesting that the OOR conduct an *in camera* review of the Withheld Records.

---

[2] Requesters' appeal to the OOR presented issues not before us on appeal; therefore, discussion of those issues have been omitted.

[3] Pursuant to Section 1101(c)(1) of the RTKL:

> A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.

65 P.S. § 67.1101(c)(1).

After reviewing the parties' submissions, the OOR ordered Department to submit an exemption log describing the Withheld Records. After receiving an extension of time, Department submitted the exemption log (Exemption Log)[4] on September 27, 2018, to which Requesters responded on October 2, 2018.

*C. The OOR's Final Determination*

Based upon the parties' position papers[5], and after receiving several extensions, the OOR issued its Final Determination on October 25, 2018, which granted Requesters' appeal in part, denied it in part, and dismissed it as moot in part. The OOR found, in relevant part, that Golden Living did not meet its burden of demonstrating that the Withheld Records were exempt from disclosure as

---

[4] The OOR found that the Exemption Log generally shows that the Withheld Records are made up of the following:

> operating agreement, operations transfer agreement, executed bill of sale to operations transfer agreement, assignment and assumption agreement, new operator guaranty, management agreement, master lease, governance information/organization chart, ownership and control disclosure, ownership structure, list of ownership in other facilities, operating agreement, response to Department's requested "10 Questions," Joseph Swartz personal resume/profile & ownership list of other facilities, Golden Living facility listing, governance information/organization chart of other facilities in other states, operator bring down certificate, new operator bring down certificate, operator guaranty, subcontract pending novation, Skyline organizational charts for operations in Pennsylvania and other states.

(Final Determination at 14.)

[5] As stated above, on August 21, 2018, Requesters requested that the OOR conduct an *in camera* review of the Withheld Records. The OOR responded to this request in its Final Determination and determined that it had "the requisite information and evidence before it to properly adjudicate the matter." (Final Determination at 5.) Accordingly, the OOR denied the request for an *in camera* review.

4

confidential proprietary information. The OOR explained that the affidavit submitted by Golden Living

> does not address how the [W]ithheld [R]ecords, including the ownership and structure information and general operating agreement, such as the operations transfer agreement, transfer lease, general policies, as well as the biographical information of its officers, directors, and key employees would create actual competition in the relevant market and how it would suffer substantial competitive injury if these records were released.

(Final Determination at 16.) As such, the OOR concluded that Golden Living did not demonstrate that the Withheld Records contained confidential proprietary information because "Golden Living's position statement discusses the documents it purports to be confidential and proprietary in only general terms, and the [E]xemption [L]og is too conclusory to support a finding of confidential proprietary information." (*Id.* at 18.) The OOR also concluded that, "based on a review of Golden Living's position statement, the [E]xemption [L]og," and the affidavit, "Golden Living has not presented evidence to distinguish between its records and Skyline's records" and, therefore, all responsive records, regardless of whether the records are those of Golden Living or Skyline, must be disclosed. (*Id.* at 17.)

## II. Discussion

On appeal[6], Golden Living presents the following three issues for review[7]: (1) whether Golden Living met its burden of proving the Withheld Records are exempt from disclosure under the RTKL as confidential proprietary information; (2)

---

[6] "On appeal from the OOR in a [RTKL] case, this Court's standard of review is de novo, and our scope of review is plenary." *Saunders v. Dep't of Corr.*, 172 A.3d 110, 112 n.2 (Pa. Cmwlth. 2017).

[7] We have rearranged the order of Golden Living's arguments for ease of discussion.

5

whether our precedent in *Department of Public Welfare v. Eiseman*, 85 A.3d 1117, 1128 (Pa. Cmwlth. 2014), *rev'd on other grounds*, 125 A.3d 19 (Pa. 2015), should be reexamined and overruled; and (3) whether the OOR erred by ordering the production of Golden Living records when the Request pertained to the records the Department reviewed to approve Skyline as the operator of the Facilities.

Before we address the parties' arguments, we note that "the objective of the [RTKL] . . . is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). We must "liberally construe the RTKL to effectuate its purpose of promoting 'access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions.'" *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 381 (Pa. 2013) (quoting *Allegheny Cty. Dep't of Admin Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011)). "Consistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed." *Dep't of Educ. v. Bagwell*, 114 A.3d 1113, 1122 (Pa. Cmwlth. 2015). We now turn to the parties' arguments.

> ### A. Whether Golden Living met its burden of demonstrating that the Withheld Records are exempt from disclosure under the RTKL as confidential proprietary information.

Golden Living asserts it presented sufficient evidence to demonstrate that the Withheld Records contain confidential proprietary information and the OOR erred by finding otherwise. Specifically, Golden Living points to the affidavit it submitted to the OOR. Golden Living contends that the affidavit it submitted "was relevant, credible, non-conclusory and submitted in good faith." (Golden Living's Brief (Br.) at 9.) Further, Golden Living asserts that unlike the affidavit it submitted in

6

*Broomall Operating Company v. William Murray* (Pa. Cmwlth., No. 1685 C.D. 2017, filed December 14, 2018) (concluding, *inter alia*, that the affidavit submitted by the petitioner did not establish that the records at issue were kept confidential for purposes of the confidential proprietary information exemption to the RTKL), the affidavit here "include[s] the steps that Golden Living takes to maintain the confidentiality of the information that is the subject to this RTKL request." (Golden Living's Br. at 10.) As such, Golden Living argues, the affidavit demonstrates that the Withheld Records contain confidential proprietary information exempt from disclosure.

Requesters respond that the affidavit submitted by Golden Living "struggles to provide sufficient evidence necessary because it is conclusory." (Requesters' Br. at 15.) Requesters contend that although the affidavit "track[s] the language of the exemption, stating that the test has been met is not the same as providing sufficient, detailed evidence and examples of how and why the test is met." (*Id.*) Specifically, Requesters argue that the affidavit submitted by Golden Living does not satisfy the substantial harm prong of the definition of confidential proprietary information because the affidavit does not give "concrete examples [] or details which would lend credence to the fact that Golden Living would likely suffer if the [Withheld] [R]ecords were released." (*Id.* at 16.) As such, Requesters contend the affidavit submitted by Golden Living is not sufficient to demonstrate that the Withheld Records are exempt from disclosure under the RTKL.

Pursuant to Section 305(a) of the RTKL, "[a] record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record." 65 P.S. § 67.305(a). However, the RTKL exempts from disclosure, among other things, confidential proprietary information. *Id.*; Section 708(b)(11) of the RTKL, 65 P.S.

7

§ 67.708(b)(11). Section 102 of the RTKL defines the term "confidential proprietary information" as:

Commercial or financial information received by an agency:

(1) which is privileged or confidential;

(2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information.

65 P.S. § 67.102. To determine whether records were kept "confidential," we must look to "the efforts the parties undertook to maintain their secrecy." *Eiseman*, 85 A.3d at 1128.[8] This test is commonly referred to as the "efforts test." "In determining whether disclosure of confidential information will cause 'substantial harm to the competitive position' . . . an entity needs to show: (1) actual competition in the relevant market; and, (2) a likelihood of substantial competitive injury if the information w[as] released." *Id.* The second part of the test, relating to competitive injury, "is limited to harm flowing from the affirmative use of proprietary information by competitors" and "should not be taken to mean simply any injury to competitive position." *Id.* (quoting *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1195 (9th Cir. 2011)). "The party asserting the exemption bears the burden of proving the exemption applies" by a preponderance of the evidence[9]. *Highmark Inc. v. Voltz*, 163 A.3d 485, 490 (Pa. Cmwlth. 2017).

---

[8] We note that Golden Living questions the validity of *Eiseman*. This issue is discussed fully in Subsection (B), *infra*.

[9] "A preponderance of the evidence is such evidence as would lead a fact-finder to find that the existence of a contested fact is more probable than the nonexistence of the contested fact." *Office of the Dist. Atty. of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017).

"Relevant and credible testimonial affidavits may provide sufficient evidence in support of a claimed exemption." *Office of the Dist. Atty. of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017). The affidavit "must be specific enough to permit this Court to ascertain how disclosure . . . would reflect that the records sought fall within the proffered exemptions." *W. Chester Univ. of Pa. v. Schackner*, 124 A.3d 382, 393 (Pa. Cmwlth. 2015). "[C]onclusory affidavits, standing alone, will not satisfy the burden of proof." *Bagwell*, 155 A.3d at 1130. Further, "an affidavit which merely tracks the language of the exception it presupposes is insufficient to demonstrate that the responsive records are exempt from disclosure." *Pa. State Police v. Muller*, 124 A.3d 761, 765 (Pa. Cmwlth. 2015).

Here, Golden Living submitted the affidavit of Krista Elmore (Elmore), a licensure specialist for Golden Living. Elmore attested, in relevant part, as follows:

> 3. On February 1, 2017, Golden Living transferred operations of the . . . Facilities to Skyline . . . and affiliates . . . and such transfer involved the execution by the parties of an [o]perations [t]ransfer [a]greement ("OTA"). Effective as of the same date as the OTA, Golden Living's affiliated property owners leased the real property to Skyline . . . and its affiliates.
>
> . . .
>
> 5. When Golden Living transferred operations of the Facilities to Skyline, Skyline was required to submit a change of ownership application [(Applications)] to D[epartment] . . . , which was approved by D[epartment].
>
> 6. The Applications submitted by Skyline contain information that is confidential and not publicly accessible.
>
> 7. The Applications contain specific disclosures regarding a range of confidential and proprietary information, including: (i) the business structure of Golden Living and its affiliates; (ii) detailed biographical information regarding officers, directors and key employees; and (iii) the operational support structure of the Facility and organization.

9

8.  The Applications include exhibits and other attachments that describe the manner in which the Golden Living Facilities obtained services needed to operate the Facilities and even include actual operating agreements.

. . .

10.  The Applications represent a collection of data and information that third parties cannot readily obtain from other sources.

11.  The market for nursing care facilities is extremely competitive. Golden Living [] facilities compete against other providers for new residents and patients.

12.  In order to stay competitive in obtaining new residents, nursing care facilities must also compete with one another in (i) hiring and retaining qualified staff and professional personnel and (ii) obtaining third-party vendor services to aid with various aspects of a facility's administrative and clinical operations.

. . .

14.  Public disclosure of the Applications would cause substantial harm to the competitive position of the organizations whose information is contained in the Application.

15.  Golden Living took great lengths to maintain the confidentiality of the information that was included in the Applications, such as the legal department reviewing all requests for release of these agreements. Golden Living also has objected to the production of confidential documents in legal discovery. On numerous occasions, Golden Living has filed motions for a protective order in lawsuits in an effort to limit the disclosure of confidential documents including leases and OTAs.

16.  Golden Living employees are required to abide by applicable non-disclosure requirements, contractual confidentiality requirements and company privacy requirements and expectations to maintain the confidentiality of private business information such as this information.

(R.R. at 217a-18a.)

The OOR found that Elmore's affidavit, like the affidavit submitted in *Broomall Operating Company*, does not explain how release of the Withheld Records "would create actual competition in the relevant market and how it would suffer substantial competitive injury if these records were released." (Final Determination at 16.) Thus, the OOR concluded that the Elmore affidavit was not sufficient to establish that the Withheld Records are exempt from disclosure as confidential proprietary information. We agree. Like the affidavit Golden Living submitted in *Keystone Nursing and Rehab of Reading, LLC v. Daniel Simmons-Ritchie* (Pa. Cmwlth., No. 1631 C.D. 2018, filed January 3, 2020), Elmore's affidavit is conclusory and merely tracks the definition of confidential proprietary information, which "is insufficient to demonstrate that the responsive records are exempt from disclosure." *See Muller*, 124 A.3d at 765. Because the Elmore affidavit lacks specificity and merely tracks the definition of confidential proprietary information, it does not explain **how** Golden Living would suffer competitive harm in the long-term care marketplace if the Withheld Records were released.

While Golden Living argues that the Elmore affidavit is more specific than the affidavit it submitted in *Broomall Operating Company* with regard to confidentiality, for the above-mentioned reasons, the affidavit does not demonstrate how Golden Living would suffer in the marketplace if the Withheld Records were released. Elmore's affidavit is not "specific enough to permit this Court to ascertain how disclosure of the [Withheld Records] would reflect that the records sought fall within the proffered exemption[]." *Schackner*, 124 A.3d at 393. Therefore, because Golden Living has not demonstrated that release of the Withheld Records would cause it to suffer competitive harm, the second prong of the definition of confidential

11

proprietary information, Golden Living has not demonstrated that the Withheld Records are exempt from disclosure as confidential proprietary information.

*B. Whether our precedent in Eiseman should be reexamined and overturned.*

Pursuant to Pennsylvania Rule of Appellate Procedure 2137, Pa.R.A.P. 2137, Golden Living adopts the arguments made by Keystone Nursing and Rehab of Reading, LLC in *Keystone Nursing and Rehab of Reading, LLC* with respect to whether *Eiseman* should be overturned. For the reasons set forth in *Keystone Nursing and Rehab of Reading, LLC*, we decline to review *Eiseman* in the present matter because whether the Withheld Records were kept confidential is not outcome determinative. As set forth above, Golden Living failed to demonstrate that the Withheld Records would cause it to suffer competitive harm if released; therefore, the Withheld Records are not exempt from disclosure regardless of whether they were kept confidential. *See* 65 P.S. § 67.102.

*C. Whether the OOR erred by ordering the production of Golden Living records.*

Golden Living asserts that when it "transferred operations of the[] [F]acilities," Skyline was "required to submit change of ownership [A]pplications to the D[epartment]" as part of the Applications. (Golden Living's Br. at 7.) Golden Living further asserts that it and its affiliates "provided required documentation to" Skyline which "submitted the information to the D[epartment]." (*Id.*) Golden Living argues that the documents it provided to Skyline for purposes of submitting the Applications should not have to be disclosed because the "[R]equest sought those documents that the D[epartment] reviewed prior to approving Skyline's licensing and certification." (*Id.* at 10.) Golden Living contends they "should not suffer due

12

to the OOR's inability to distinguish" between Golden Living records and Skyline records and that Department "should be permitted to deny [Requesters'] appeal to the extent it pertained to any Golden Living documents." (*Id.* at 10-11.)

Requesters respond by asserting that, "[i]n actuality, the thrust of the [R]equest is to obtain documents with information about the sale of the [F]acilities and D[epartment's] approval of the licensing and certification behind that sale to a new buyer." (Requesters' Br. at 33.) Requesters argue "[i]t is irrelevant to whom these records belong, because regardless of the distinction or lack thereof, each party's records are D[epartment] records subject to disclosure" and, therefore, the Withheld Records must be disclosed regardless of whether the records are those of Golden Living or Skyline. (*Id.*)

Golden Living mischaracterizes this issue. Item 1 requests "copies of the public records the Department . . . reviewed (as the oversight agency) before approving Skyline['s] [] licensing and certification of several Golden Living [] nursing homes." (R.R. at 6a.) Item 2 specifies that in addition to the responsive records to Item 1 "[p]lease also include the management agreements as well as state documents that spell out the quality and/or financial criteria used for this approval." (*Id.*) Thus, Item 1 seeks **all public records Department reviewed** before approving the transfer of the Facilities from Golden Living to Skyline and Item 2 requests that management agreements be included in addition to the responsive records to Item 1, as well as the criteria Department uses to evaluate whether to approve these types of transfers.

As part of the transfer process of the Facilities from Golden Living to Skyline, Skyline had to submit the Applications to Department for review. The Applications contained information and documents provided by Golden Living to Skyline for

purposes of submitting the Applications. Department presumably reviewed the Applications before approving transfer of the Facilities to Skyline; therefore, the Applications and any attachments are responsive to the Request. The Request does not distinguish between records pertaining to Golden Living versus records pertaining to Skyline. Rather, the Request seeks **all records** Department reviewed as part of the transfer process. Thus, Golden Living is correct that the Request seeks "those documents that the D[epartment] reviewed prior to approving Skyline's licensing and certification." (Golden Living's Br. at 10). However, in contrast to the position taken by Golden Living, "those documents" include those submitted by Golden Living to Skyline for purposes of submitting the Applications. Accordingly, the OOR did not err by ordering the release of records Golden Living provided to Skyline for purposes of submitting the Applications because the Golden Living records are responsive to the Request.

## III. Conclusion

Based upon the foregoing reasons, we conclude that Golden Living has not demonstrated that the Withheld Records are exempt from disclosure as confidential proprietary information or as nonresponsive to the Request. We therefore affirm the OOR's Final Determination dated October 25, 2018. Department must provide Requesters with the Withheld Records within 30 days of the date of this Opinion with appropriate redactions, as required by law, to protect personal privacy rights.

**RENÉE COHN JUBELIRER,** Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Golden Gate National Senior Care    :
Center, d/b/a Golden Living,    :
                Petitioner    :
    :
        v.    :    No. 1543 C.D. 2018
    :
Nicole Brambila and The Reading    :
Eagle, and Pennsylvania Department    :
of Health, and Skyline Healthcare, LLC,  :
             Respondents    :

# O R D E R

NOW, January 3, 2020, the Final Determination of the Pennsylvania Office of Open Records dated October 25, 2018, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** Judge