# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Bonner, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1636 C.D. 2024 |
| | : | |
| Department of Community | : | |
| and Economic Development | : | |
| (Office of Open Records), | : | |
| Respondent | : | Argued: April 13, 2026 |


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MATTHEW S. WOLF, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                          FILED:  May 8, 2026

Michael Bonner (Requester) petitions this Court for review of a November 4, 2024 Final Determination of the Office of Open Records (OOR).  The Final Determination denied Requester's appeal from the Department of Community and Economic Development's (Department) denial of a request for records on the basis that the records sought do not document a transaction or activity of the Department, and thus do not constitute "records" under Section 102 of the Right-to-Know Law (RTKL).[1]  For the reasons that follow, we affirm.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.102.

## Background

On July 5, 2024, Requester submitted a RTKL request (Request) to the Receiver for the City of Chester (Receiver),[2] as an employee of the Department,[3] seeking the following:



1. The City of Chester's [redacted] codification of ordinances, including any and all record books and compilations of ordinances recorded by the City's clerk, or [redacted] copies of same.

2. The [redacted] index(es) for the City of Chester's [redacted] codification of ordinances, including the index(es) for any and all record books and compilations of ordinances recorded by the City's clerk, or a [redacted] copy of same.

3. The City of Chester's [redacted] resolutions, including any and all record books and compilations of resolutions recorded by the City's clerk, or redacted copies of same.

4. The [redacted] index(es) for the City of Chester's [redacted] resolutions, including the index(es) for any and all record books and compilations of resolutions recorded by the City's clerk, or [redacted] copies of same.

---

[2] Vijay Kapoor presently serves as the Receiver for the City of Chester, a financially distressed municipality under the Municipalities Financial Recovery Act, Act of July 10, 1987, P.L. 246, No. 47, *as amended*, 53 P.S. §§ 11701.101-11701.712, commonly referred to as "Act 47".

[3] The Request explained:

> These requests are being sent to the Agency Open Records Officer for the Pennsylvania Department of Community and Economic Development ("[Department]") based on the attached business card of the Receiver for the City of Chester (Attachment "C" to the enclosed Standard Right-to-Know Law Request Form) indicating that the Receiver is associated with the [Department].

Reproduced Record (R.R.) 16a.



5. The City of Chester's ███████ rules and/or regulations applicable to any commercial or non-profit entity operating in the City, including any and all record books and compilations of rules and/or regulations applicable to any commercial or non-profit entity operating in the City of Chester, or copies of same.

6. The ███████ index(es) for the City of Chester's ███████ rules and/or regulations applicable to any commercial or non-profit entity operating in the City, or ███████ copies of same.

7. The City of Chester's ███████ Home Rule Charter, or a ███████ copy of same.

8. To the extent not included in the above, the ███████ codification of ordinances titled "The General Laws of the City of Chester" pursuant to § 11.4-406 of the City of Chester's Home Rule Charter, or a ███████ copy of same.

9. To the extent not included in the above, the City of Chester's ███████ Code of Ordinances or a ███████ copy of same.

10. To the extent not included in the above, the City of Chester's ███████ Administrative Code or a ███████ copy of same.

11. To the extent not included in the above, all ███████ ordinances, resolutions, rules, regulations, and/or other official actions of the City of Chester and/or its Council having the force and effect of law that are applicable to any commercial or non-profit entity operating in the City of Chester, or ███████ copies of same.

Reproduced Record (R.R.) 14a-17a (redactions in original).[4] The Department invoked a thirty-day extension, 65 P.S. § 67.902(b). On August 11, 2024, the

---

[4] The Request included the redactions. Requester explained that the identical unredacted request was sent to the Receiver on May 30, 2024, but was denied "because it mandates that the Department conducts legal research to determine whether the conditions established in the request **(Footnote continued on next page…)**

Department denied the Request on the basis that it lacked sufficient specificity under Section 703 of the RTKL, 65 P.S. § 67.703, because it required the Department to perform legal research. R.R. 6a-7a. Requester appealed the Department's denial to the OOR. The OOR invited the parties to submit supplemental evidence and file position statements. R.R. 48a.

Requester filed a position statement arguing his appeal should be granted for three principal reasons. First, he argued that contrary to the Department's assertion, no legal research is required to produce records responsive to the Request. He maintained that the Request unambiguously identifies documents and the Department must merely locate them, not conduct any legal research or analysis thereon. Second, he argued the Request seeks "records" of the Department as defined in Section 102 of the RTKL, 65 P.S. § 67.102, because "[c]onsidering and modifying the City's ordinances and other laws are activities which are central to the governmental functions of the [Department] and Receiver pursuant to statute." R.R. 87a. Third, Requester argued that none of the items in the Request are barred by any state or federal law, regulation, judicial order, privilege, or exception set forth in Section 708 of the RTKL. For these reasons, Requester asked the OOR to grant his appeal in full and direct disclosure of all responsive records.

The Department supplemented the record with an attestation of Eileen Quinn, the Department's Open Records Officer (Quinn Attestation). R.R. 81a-85a. Therein, Ms. Quinn attested that upon receipt of the Request, she submitted it to the Department's legal counsel for review. *Id.* at 82a. The attestation explains:

---

have been fulfilled in order to respond. . . ." R.R. 16a, 19a. Requester stated that "[i]n resubmitting the request for documents, I have redacted all of what [the Department] classified as imposing 'conditions.'" *Id.* at 16a.

4

4. From that review, the Department determined that each part of the Request requires the Department to review City of Chester ordinances, statutes, rules, regulations, administrative code, official actions, and/or Home Rule Charter to develop legal opinions as to whether such ordinances, statutes, rules, regulations, administrative code, official actions, and/or Home Rule Charter are currently in force for (and also as to specific codifications for parts 1 and 2) and represent the applicable legal authority for the City and have not been discarded or overruled by the City of Chester in lieu of updated or revised ordinances, statutes, rules, regulations, administrative code, official actions, and/or Home Rule Charters. *See* Ex. "A."

5. Additionally, each part of the Request offers no limiting timeframe as to the records sought, further evidencing the Request's lack of sufficient specificity and further necessitating an opinion be developed as to the legal significance of the records to be reviewed. 65 P.S. § 67.703; *Askew v. Pa. Off. of the Governor*, 65 A.3d 989, 993-94 (Pa. [Cmwlth.] 2013).

6. Further, for parts 5, 6, and 11 of the Request, the Department must develop legal opinions as to whether ordinances, resolutions, rules, regulations, and/or other official actions of the City of Chester and/or its Council have the force and effect of law that are applicable to any commercial or non-profit entity operating in the City of Chester. *See* Ex. "A."

7. Additionally, the Department must develop legal opinions as to what should be deemed 'official actions' of the City of Chester from a legal standpoint for Request part 11. *See* Ex. "A."

8. Importantly, the Department must develop legal opinions as to what City of Chester resolutions were legally executed and properly approved by the City of Chester for Request parts 3, 4, and 11. *See* Ex. "A."

9. Finally, the Department must develop legal opinions for Request parts 7 and 8 as to whether the most current Home

5

Rule Charter for the City of Chester was legally instituted in accordance with applicable statutes. *See* Ex. "A."

*Id.* at 82a-83a. She maintained that because the Request has no limiting timeframe and seeks the duplication of statutes and the supplying of legal authority, the Request lacks sufficient specificity under Section 703 of the RTKL. *Id.* at 83a-84a (collecting cases and OOR final determinations). Ms. Quinn further attested that the Request seeks records that neither document a transaction or activity of the Department nor are created, received, or retained pursuant to law or in connection with the Department's duties, and thus do not constitute records for purposes of the RTKL. *Id.* at 84a. She noted, however, that the Request does seek items that appear to document the transaction or activities of a different local agency—the City of Chester. *Id.*

In its position statement, the Department asserted that Requester's appeal should be dismissed because (1) the Receiver is not an agency under the RTKL, (2) the Request lacks sufficient specificity because it mandates the Department to perform legal research, (3) the requested records do not intersect the Receiver's governmental function or the Department's transactions or activities, and (4) the Quinn Attestation is sufficient evidentiary support that the requested records need not be disclosed pursuant to the RTKL.

The OOR issued the Final Determination on November 4, 2024, denying Requester's appeal. Therein, it found that the Receiver is a separate and distinct Commonwealth agency subject to the RTKL.[5] Final Determination at 5-6. The OOR further concluded that the documents requested are not "records" of the

---

[5] Final Determination at 5-6 (citing *Brown v. Municipal Financial Recovery Advisory Committee for the City of Chester*, OOR Dkt. AP 2022-0500) (*Brown*)). In *Brown*, the OOR held "[t]he Receiver is a Commonwealth agency subject to the RTKL that is required to disclose public records. 65 P.S. § 67.301." *Brown*, Final Determination at 3.

Department pursuant to Section 102 of the RTKL because they do not document a "transaction or activity" of the Department. *Id.* at 6-8. The OOR noted that Requester is not prohibited from filing a new request with the Receiver or the City of Chester. *Id.* at 8. Requester petitioned this Court for review.

## Issues

On appeal, Requester raises several allegations of error, which we combine and reorder for ease of disposition. First, Requester argues the OOR erred in concluding that the documents sought in the Request are not "records" of the Department as defined by Section 102 of the RTKL.[6] Second, Requester submits the OOR erred in concluding that the Department acted in good faith in responding to the Request. Third and finally, Requester contends the OOR erred in failing to order the Department or the Receiver to make inquiries of other agency personnel and third parties for documents responsive to the Request.

## Discussion

## I. Records of an Agency

We turn first to Requester's allegation that the OOR erred in concluding that the items sought in the Request are not "records" of the Department. Section 102 of the RTKL defines a "record" as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording,

---

[6] Assuming, arguendo, that the Request seeks records of the Department, Requester argues the OOR erred by failing to analyze the validity of the Department's conclusion that the Request lacked sufficient specificity.

> information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. § 67.102. We have explained that "[t]here are two parts to this definition." *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011). The first requires that the requested information document a transaction or activity of an agency. *Id.* The second requires that the information sought is created, received, or retained pursuant to law or in connection with a transaction, business, or activity of the agency. Requester advances three arguments why the items sought in the Request fall within this definition.

## A. Act 47

First, Requester argues that Act 47's statutory requirements prove that the items sought in the Request are central to the activities of the Department and the Receiver and thus are classic examples of "records" for purposes of the RTKL. Requester points specifically to Sections 241(4) and 703(b) of Act 47, which, in relevant part, contemplate that the Act 47 Coordinator's plan may "recommend changes in municipal ordinances or rules," 53 P.S. § 11701.241(4), and require the Receiver to "consider the plan prepared by the coordinator . . . ," 53 P.S. § 11701.703(b). Put simply, Requester argues the Receiver cannot discharge his statutory duty without considering "recommended changes in municipal ordinances or rules" contained in the Coordinator's plan. 53 P.S. § 11701.241(4). And Requester argues that the plans produced by the City of Chester's Coordinator and the Receiver evidence that this duty has been discharged. Requester cites to the Coordinator's Act 47 Exit Plan issued in 2018, which provided recommendations, including a call for the City of Chester to implement revisions to local ordinances, and the Receiver's August 20, 2020 recovery plan, which provides for initiatives relating to the City of Chester's ordinances. Because the Department and the

Receiver have a role in creating new laws for the City of Chester, Requester argues the items sought in the Request relate directly to activities of the Department and the Receiver and must be retained by the Department pursuant to law.

The Department responds that its role in the administration of Act 47 does not transform the items sought in the Request into records of the Department for purposes of the RTKL. The Department maintains that each of the requested records originates from the City of Chester, and thus the OOR correctly held that the items sought are not Department records, and that Requester may appropriately direct its Request to either the Receiver or the City.

For context, we briefly discuss the framework of Act 47. Formally named the Municipalities Financial Recovery Act, Act 47 is a comprehensive remedial scheme for municipalities facing financial peril. *Siger v. City of Chester*, 309 A.3d 698, 705 (Pa. 2024). As shown throughout the statutory provisions, the Department plays a key role in the administration of Act 47. The powers and duties that are statutorily afforded to the Department are set forth in Section 121. *See* 53 P.S. § 11701.121. At a high level, Act 47 tasks the Department with (a) compiling financial data; (b) assessing data; (c) notifying agencies of determinations; (d) acting as analyzer of municipal reports; (e) furnishing program data to municipalities; (f) developing early warning systems; (g) distributing grants and loans; and (h) promulgating rules and regulations. *Id.*

In support of his position that the items sought in the Request are records of the Department, Requester cites to the two aforementioned provisions of Act 47, which contemplate potential changes to a distressed municipality's ordinances or laws through the Coordinator's and the Receiver's plan. To fully

9

understand Requester's argument, we briefly address the two chapters of Act 47 in which those provisions fall.

Requester first cites to a provision contained in Chapter 2. Following a determination of a municipality's financial distress, Chapter 2 requires the Department to appoint a Coordinator who, in turn, "shall prepare a plan addressing the municipality's financial problems." 53 P.S. § 11701.221. The Coordinator "may be an employee of the [D]epartment, furnished with additional staff or consultant assistance, if needed, or may be a consultant or consulting firm." *Id.* Requester highlights Section 241(4), which lays out the items a Coordinator may consider in his plan. 53 P.S. § 11701.241(4). Subsection (4) provides:

> A plan formulated by the appointed coordinator shall be consistent with applicable law and shall include any of the following factors which are relevant to alleviating the financially distressed status of the municipality:
>
> ***
>
> (4) Recommended changes in municipal ordinances or rules.

*Id.*

The second provision cited by Requester is Section 703(b), which appears in Chapter 7 of Act 47. Chapter 7 addresses, generally, the appointment of a Receiver following the Governor's declaration of a fiscal emergency. *See* generally 53 P.S. §§ 11701.701-712. Section 702 permits the Governor to "direct the secretary[7] to file a petition in Commonwealth Court to appoint the individual named in the petition as a receiver for the distressed municipality." 53 P.S. §

---

[7] For purposes of Act 47, the term "secretary" refers to the Secretary of Community and Economic Development of the Commonwealth. *See* 53 P.S. § 11701.103.

10

11701.702(a). Section 703 then requires the Receiver to furnish this Court with a recovery plan. 53 P.S. § 11701.703. Subsection (b) lists the contents to be contained in the Receiver's recovery plan and directs the Receiver to "consider the plan prepared by the coordinator under section 241." 53 P.S. § 11701.703(b). Based on these provisions, Requester maintains "[t]he requested items evidence the extent to which the [Department] and its Receiver possess the very ordinances and other laws of the City that they are empowered with considering and potentially changing." Requester's Br. at 18.

While we certainly acknowledge the Department's pivotal role in administering Act 47, we cannot agree with Requester that the items sought in this Request document a "transaction or activity" of the Department to satisfy the first part of the definition of "record." 53 P.S. § 11701.102. The Request broadly seeks the City of Chester's ordinances, rules, and laws. While highlighting portions of Act 47 that permit the Coordinator and the Receiver to recommend or implement changes to a distressed municipality's ordinances or rules, Requester fails to show the Department's connection to the same. As found by the OOR—and unchallenged in this appeal—the Receiver is a separate Commonwealth agency for purposes of the RTKL. Thus, Requester's reliance on provisions that outline the Receiver's statutory obligations under Act 47 miss the mark.[8] Accordingly, we conclude that Act 47 in and of itself does not render the items sought in the Request a record of the Department.

---

[8] Requester has not identified the Coordinator or alleged that the Coordinator is an employee of the Department. Because it is neither considered by the OOR below nor argued by the parties on appeal, this Court makes no conclusion as to whether the Coordinator is a separate Commonwealth agency for purposes of the RTKL.

11

## B. Agency Production of Ordinances & Other Laws

Requester next argues that Courts regularly compel the production of ordinances and other laws in response to RTKL requests, citing, *inter alia*, *Olick v. City of Easton* (Pa. Cmwlth., No. 801 C.D. 2022, filed April 4, 2024), 2024 WL 1458454, *Brunermer v. Apollo Borough*, (Pa. Com. Pl., Nos. 2019-1343, -1402, -1518, -1790, filed Jan. 15, 2020),[9] and *Gutman v. Pennsylvania State Police*, 612 A.2d 553, 573 (Pa. Cmwlth. 1992), *petition for allowance of appeal denied*, 621 A.2d 583 (Pa. 1993). The Department responds that the cases cited by Requester are either inapposite or easily distinguishable, as *Olick* dealt with procedural matters, and *Brunermer* and *Gutman* involved requests to the subject borough and agency that originated the records, which in this case, would be the City of Chester.

We agree with the Department that the cases relied on by Requester are not relevant to the instant matter. In *Olick*, the requester sought documents and information identifying, *inter alia*, the City of Easton's codes and ordinances. *Olick*, slip op. at 1. The OOR directed the City of Easton to provide certified copies of the requested ordinances, but the remainder of the opinion disposed of procedural issues. *See generally id.* at 3-8. Because there was no question that the ordinances of the City of Easton were "records" of that agency for purposes of the RTKL, the case is inapposite to the issues presented in this appeal.

Similarly, *Brunermer* and *Gutman* are distinguishable as those cases dealt with requests for documents that originated from the agency in which the request was directed. While *Gutman* did consider whether the requests were "public records," it did so under the RTKL's predecessor Act. *See* 65 P.S. § 66.1, repealed by the Act of Feb. 14, 2008, P.L. 6. Accordingly, *Brunermer* and *Gutman* are also

---

[9] The trial court's order in *Brunermer* is available at pages 267a-72a of the Reproduced Record.

distinguishable. Moreover, we note that the OOR did not deny Requester's appeal because it sought ordinances or other laws. Its denial was based on the conclusion that such ordinances or laws did not document a transaction or activity of the Department.

## C. Exclusivity of Agency Records

Third, Requester submits that the OOR's conclusion that the items sought are not records of the Department because they are records of a different local agency—the City of Chester—is misplaced. He argues that the OOR improperly relied on two flawed premises in reaching this conclusion: "[first], that records which document the transactions or activities of one agency cannot also document the transactions or activities of another agency; and [second] that in order for documents to constitute 'records' under the RTKL, the documents must have been created, received, or retained by the agency to whom the RTKL request is directed." Requester's Br. at 23.

The Department responds that the OOR correctly concluded that the items sought are not records of the Department, and therefore it had no obligation to produce anything responsive. In support, the Department cites to this Court's recent decision in *Mutchler v. Pennsylvania Office of Administration*, 334 A.3d 57 (Pa. Cmwlth.), *appeal granted in part*, 346 A.3d 1245 (Pa. 2025), where we held that the RTKL does not "require one agency to obtain from another agency information that the requester could get from that other agency directly." 334 A.3d at 64. Additionally, the Department argues that the Quinn Attestation provides sufficient evidentiary support to prove that the Request does not seek records of the Department, and that the OOR rightfully directed Requester to file the Request with the Receiver or the City.

In *Mutchler*, the requesters sought information to validate their belief that an officer of the Camp Hill Police Department (CHPD) used the Pennsylvania Justice Network (JNET)[10] to perform an unauthorized search into various individuals. After failing to secure this information from an RTKL request directed to CHPD, the requester filed a second request directed to the Pennsylvania Office of Administration (Office), which administers the JNET platform. The Office partially denied the request, and on appeal, the OOR concluded that the Office met its burden of proving there were no records responsive to the outstanding items in its possession, custody, or control, and that the Office was not required to seek such records from CHPD. On appeal to this Court, the requesters argued that the Office was required to seek responsive records from CHPD, a separate agency, under Section 506(d)(1) of the RTKL. 65 P.S. § 67.506(d)(1). Under that provision, "a public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency" shall, subject to exemptions, generally be considered a public record of the agency for purposes of the RTKL. In terms of inter-agency contracting, we concluded that Section 506(d)(1) was of no moment:

> [W]e cannot conclude that Section 506(d)(1) of the RTKL allows a requester to require one agency to obtain from another agency information that the requester could get from that other agency directly. Section 506(d)(1) serves the salutary purpose of preserving "some level of public access to information about governmental functions ... where an agency chooses to contract out the performance of that function to a third[ ]party." *Real Alternatives [v. Dep't of Human Servs,]*, 279 A.3d [96,] 106 (quoting

---

[10] "JNET is a web-based portal through which authorized users in the Commonwealth can access public safety and criminal justice information maintained by separate third-party data providers." *Mutchler*, 334 A.3d at 60.

14

*UnitedHealthcare of Pa., Inc. v. Baron*, 171 A.3d 943, 963 (Pa. Cmwlth. 2017)) (additional quotation marks omitted). Where the third party is another agency, public access is already assured. There is no need or purpose for involvement of an agency that does not possess the records sought, where another agency does possess those records and, indeed, is their originator.

*Mutchler*, 334 A.3d at 64.

The instant case does not contemplate Section 506(d)(1) of the RTKL or inter-agency contracts, and for that reason we disagree with the Department that *Mutchler* is dispositive here. Importantly, *Mutchler* does not stand for the proposition that an agency need not disclose records simply because they lie with another agency. Indeed, in a footnote, the *Mutchler* Court specifically noted that the requesters did not act improperly in seeking the records from the Office, and "[i]f the records had been in [the Office's] possession and not subject to an exemption, they would have been subject to disclosure by [the Office]." *Mutchler*, 334 A.3d at 664 n.5. Accordingly, Requester is correct that some "records" under the RTKL may be held by more than one agency, and if so, are subject to disclosure by all agencies with possession.

Requester's argument ultimately fails however, as the OOR did not base its denial on the fact that the items sought in the request were "records" of the City of Chester. Rather, the OOR held that the items sought in the Request did not document a transaction or activity of the Department, and simply noted Requester could file a future request seeking the same documents from either the Receiver or the City.

As to whether the items sought met the first part of the "records" definition, the OOR relied on the sworn attestation of the Department's Open

15

Records Officer, Ms. Quinn.[11] It is well-settled that the agency bears the burden of proof that it does not have a requested record. *Mutchler*, 334 A.3d at 62. "To meet its burden, an agency may provide either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Id.* A sworn affidavit made under the penalty of perjury may serve as sufficient evidentiary support of nonexistence of a record. *Id.* Absent competent evidence of bad faith, the averments in an attestation or an affidavit should be accepted as true. *Id.*

Ms. Quinn attested:

14. Additionally, the Request seeks records that (a) do not document a transaction or activity of the Department and (b) that are not created, received, or retained pursuant to law or in connection with the Department's duties, however, do document the transaction of business or activities of a different local agency, namely the City of Chester. *See* Ex. "A;" *See* www.dced.com; *See* www.chestercity.com.

15. As both the Department and Receiver don't create, receive, or retain the requested City of Chester ordinances, resolutions, rules, regulations, administrative code, official actions, and/or Home Rule Charter, the Department must conduct legal research to locate, authenticate, and determine the legal applicability for such City of Chester ordinances, resolutions, rules, regulations, administrative code, official actions, and/or Home Rule Charter. *See* Ex. "A"; See www.dced.com; *See* www.chestercity.com; *See* http://www.chesterreceivership.com; *See* Cooper v. Pa. Dep't. of State, OOR Dkt. AP 2014-1981.

16. As the Request seeks items that do not meet the definition of "public record" for the Department, the items need not be disclosed to Requester. *See* 65 P.S. §§ 67.102,

---

[11] Ms. Quinn declared "pursuant to 18 Pa.C.S. § 4904, that the following statements are true and correct based upon [her] personal knowledge, information, and belief." R.R. 82a.

16

67.506(d); *See* Ex. "A" and "D"; See www.dced.com; *See* www.chestercity.com; *See* http://www.chesterreceivership.com; *See Cooper v. Pa. Dep't. of State*, OOR Dkt. AP 2014-1981; *In re Silberstein*, 11 A.3d 629, 633-634 (Pa. Cmwlth. 2011); *Pa. Off. of AG v. The Phila. Inquirer*, 127 A.3d 57, 63 (Pa. Cmwlth. 2015); *DeBartola v. Johnstown Redev. Auth.*, OOR Dkt. AP 2019-1868; *Meguerian v. Off. of the AG*, 86 A.3d 924, 931 (Pa. Cmwlth. 2013); *Friedman v. Pa. O.O.R.*, OOR Dkt. AP 2019-1182; *Allegheny Cty. Dep't. of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1036 (Pa. Cmwlth. 2011); *Highmark, Inc. v. Voltz*, 163 A.3d 485, 495-496 (Pa. Cmwlth. 2017).

R.R. 84a-85a. OOR accepted as true the averments in the Quinn attestation, and we find no fault in that conclusion. Because the Quinn Attestation supplies sufficient evidentiary support that the records sought "do not document a transaction or activity of the Department," and are not "created, received, or retained pursuant to law or in connection with the Department's duties," we find no error in the OOR's conclusion that the items sought in the Request are not records of the Department under the RTKL.

## II. Sufficiency of Records Search

We address Requester's second and third allegations of error together, both of which implicate the sufficiency of the Department's record search. Requester submits that the OOR erred in concluding that the Department conducted a good faith search for records, and that the OOR further erred in failing to order the Department to make inquiries of agency personnel and third parties for responsive records. Section 901 of the RTKL provides, in relevant part:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record ... and whether the agency has possession, custody or control of the identified

17

record, and to respond as promptly as possible under the circumstances existing at the time of the request.

65 P.S. § 67.901.  Because we conclude that the Request does not seek records of the Department, Requester's arguments are without merit.  In *Couloumbis v. Senate of Pennsylvania*, 334 A.3d 48, 55 (Pa. Cmwlth. 2025), this Court concluded that once an agency determines a request does not seek "records" under the RTKL, that ends the inquiry.  We explained:

> The plain language of [Section 901] demonstrates the legislature's intent that first, an agency must determine whether the record requested is a legislative record, public record, or financial record. After this determination, the agency must determine whether it has possession, custody, or control of the records. It would lead to an absurd result to require an agency, after determining requested records are not subject to disclosure because they are not legislative, public, or financial records, to determine whether the agency has possession, custody, or control of those records.

*Id.* at 55-56.  Accordingly, the Department was under no obligation to search for the items in the Request after it determined they were not subject to disclosure.  *Id.* at 56.  For this same reason, the Department was under no obligation to make inquiries of other agency personnel and third parties for items responsive to the Request.

## Conclusion

For the reasons set forth above, we agree with the OOR that the items sought in the Request are not "records" of the Department for purposes of the RTKL. We reiterate the OOR's sentiment that this conclusion in no way precludes Requester from filing a request for records with either the Receiver or the City of Chester.

18

Accordingly, the Final Determination of the OOR is affirmed.

_____
MATTHEW S. WOLF, Judge

19

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Bonner,                         :
                    Petitioner           :
                                        :
        v.                              :    No. 1636 C.D. 2024
                                        :
Department of Community                 :
and Economic Development                :
(Office of Open Records),               :
                    Respondent           :

## **O R D E R**

AND NOW, this 8th day of May 2026, the Final Determination of the Office of Open Records dated November 4, 2024 is AFFIRMED.

_____
MATTHEW S. WOLF, Judge